UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| BRYAN C. and HENRY B. through their next friend Michael P. Dixon, et al., <br><br> Plaintiffs <br><br> v. <br><br> JEANNE M. LAMBREW in her official capacity as Commissioner of the Maine Department of Health and Human Services, et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) )   Civil No. 1:21-cv-00005-NT |

**DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF
MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Defendants Jeanne M. Lambrew and Todd A. Landry submit this reply memorandum in further support of their Motion to Dismiss Plaintiffs' First Amended Complaint ("Complaint"). Despite pointing to alleged "life-threatening risks" evident "with each passing day," Am. Compl. (ECF No. 22) ¶¶ 5-6, Plaintiffs do not allege that they either raised their concerns with OCFS in the first instance, or brought them to the attention of the Maine District Court, an efficient means of redress that remains available today. Plaintiffs instead have leveraged purported deficiencies in care as a direct route to expansive federal interference with an executive agency that continues to actively pursue reform. While Plaintiffs' allegations, if true, are important and warrant prompt attention from OCFS, this Court should not countenance their attempt to manufacture a constitutional claim. The Court should dismiss the Complaint.

**A. The Court Should Abstain Under *Younger v. Harris***

Plaintiffs' argument against abstention rests on a mischaracterization of the Maine District Court's role. That court's oversight of child protective cases is not akin to the one-off reviews of

executive action at issue in *New Orleans Public Service, Inc. v. Council of New Orleans*, 491 U.S. 350, 355-58, 368-69 (1989) ("*NOPSI*") (City Council rulemaking proceeding and associated state court petition for review concerning public utility rate increase), and *Rio Grande Community Health Center v. Rullan*, 397 F.3d 56, 60-63, 70-71 (1st Cir. 2005) (local court proceeding regarding Puerto Rico's failure to calculate and make Medicaid reimbursement payments as required by statute). Its authority is likewise far more expansive than that of the Massachusetts juvenile court, as discussed in *Connor B. v. Patrick*, 771 F. Supp. 2d 142, 154, 157 (D. Mass. 2011) (finding abstention inappropriate where proceeding at issue was "limited to a review of executive action" because Massachusetts law "greatly circumscribes the role of juvenile courts" such that its "authority is limited to periodic, highly deferential review of [Department of Children and Families] decisions").

Instead, as described in detail in Defendants' motion, *see* Defs.' Mot. to Dismiss (ECF No. 25) ("Mot.") 2-3, 14, the Maine District Court is engaged in broad and ongoing supervision of the care provided to children in OCFS custody, which includes reviews at least every six months—and sooner at the court's discretion or when requested by the parties—and wide remedial authority, *see Connor B. ex rel. Vigurs*, 771 F. Supp. 2d at 156 ("The scope of state courts' discretion is critical to the *Younger* analysis."). By attacking the sufficiency of OCFS's recordkeeping and medication management policies and practices regarding children in OCFS custody, Plaintiffs are in effect challenging the Maine District Court's approval and oversight of that very care.

For this reason, under the three-pronged test set forth in *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 432 (1982), *Younger* abstention is appropriate. As to the first *Middlesex* prong—"ongoing state proceedings"—the federal courts of appeals who have weighed in on the subject have concluded, in states where juvenile courts play a similarly outsized role to that of Maine's District Court, that child protective proceedings qualify

2

for *Younger* abstention. *See 31 Foster Children v. Bush*, 329 F.3d 1255, 1275, 1277-78 (11th Cir. 2003); *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1291 (10th Cir. 1999). Plaintiffs relegate these cases to a footnote, *see* Pls.' Opp'n (ECF No. 36) 7 n.4, but they make no effort therein to challenge either court's reasoning on this point.

With respect to whether this lawsuit invites *interference* with state proceedings, Plaintiffs' attempt to portray the relief they seek as "systemic reform of executive action" that falls outside the purview of *Younger* misperceives the case law and ignores the broader context. Pls.' Opp'n 5. For abstention to be warranted, the federal action "need not directly interfere with an ongoing proceeding or terminate an ongoing proceeding." *31 Foster Children*, 329 F.3d at 1276; *see also Joseph A. v. Ingram,* 275 F.3d 1253, 1271 (10th Cir. 2002) ("[F]ederal court oversight of state court operations, even if not framed as direct review of state court judgments, may nevertheless be problematic for *Younger* purposes.").

Here, regardless of against whom the injunction would run, Plaintiffs' aim is to substitute the *federal* district court's view as to the efficacy and propriety of OCFS case plans, policies, and procedures—both in specific cases and system-wide—for the judgment of the *state* district court. This substitution and its associated enforcement is quintessential interference that justifies abstention. *See Laurie Q. v. Contra Costa Cty.*, 304 F. Supp. 2d 1185, 1204 (N.D. Cal. 2004) (injunction was "an entreaty . . . to oversee the Juvenile Court's performance, for it is that body that ultimately must pass upon the efficacy and propriety of the case plans at issue"); *see also 31 Foster Children*, 329 F.3d at 1278-79 ("Even though any remedial order would run against the Department, state law makes it a duty of state courts to decide whether to approve a case plan, and to monitor the plan to ensure it is followed."); *J.B.*, 186 F.3d at 1291 ("[P]laintiffs' federal action would interfere with [the family court] proceeding by fundamentally changing the dispositions and

3

oversight of the children.").[1]  In fact, it is akin to relief the court found sufficient to warrant abstention in *Sam M. v. Chafee*, 800 F. Supp. 2d 363 (D.R.I. 2011), a case Plaintiffs cite for the opposite proposition, *see id.* at 380 (concluding request for increased adoptions, decreased placements per child, and decreased institutionalization and foster care length pertained to matters "subject to the continuing jurisdiction of the Family Court" such that "[a]ny remedy would constitute an interference with orders generally issued by the Family Court"); Pls.' Opp'n 6.  The sheer scope of the relief that Plaintiffs seek likewise weighs strongly in favor of abstention. *Moore v. Sims*, 442 U.S. 415, 427 (1979). [2]

As to the second *Middlesex* prong—important state interests—it is true that OCFS has certain obligations under the Social Security Act to remain eligible for federal funding.  But those obligations do not undermine Maine's strong and well-established interest in the care of its own children, *Santosky v. Kramer*, 455 U.S. 745, 766 (1982), one that has repeatedly been deemed sufficient for *Younger* abstention purposes, *Moore*, 442 U.S. at 435; *31 Foster Children*, 329 F.3d at 1275.  That interest is especially strong here, given OCFS's efforts to keep its policies apace of the broader statutory and regulatory environment. *Carson P. ex rel. Foreman v. Heineman*, 240 F.R.D. 456, 524 (D. Neb. 2007) ("Nebraska's interest in this issue is evidenced by its current and ongoing welfare reform efforts.").  Plaintiffs' citation to a footnote in a single unpublished district

---

[1] The remaining two cases that Plaintiffs cite on this point, Pls.' Opp'n 6, concern a juvenile court that lacks the same authority as the Maine District Court, *see Kenny A. v. Purdue*, 218 F.R.D. 277, 286 n.6 (N.D. Ga. 2003) (discussing limits on court's power after custody is granted to the state), and a request for relief entirely outside the province of the juvenile court, *see L.H. v. Jamieson*, 643 F.2d 1351, 1354 (9th Cir. 1981) (seeking order "that would require Arizona to spend more money to fund dispositional alternatives").

[2] Plaintiffs' attempt to minimize *Moore* is fruitless. Pls.' Opp'n 5-6 n.2.  Nothing in *Moore*—or the district court case Plaintiffs identify, which merely lists *Moore* in a string cite, *see Marisol A. v. Giuliani*, 929 F. Supp. 662, 688 (S.D.N.Y. 1996)—suggests that its reasoning is limited to collateral attacks on state court judgments.  Plaintiffs ask this Court to rule that the constitution requires broad changes to OCFS's recordkeeping and medication management regimes in the context of a complex statutory and regulatory regime, precisely the circumstances in which *Moore* recommends abstention.  *See Moore*, 442 U.S. at 427; *see also, e.g., Fieger v. Thomas*, 74 F.3d 740, 745 (6th Cir. 1996) (applying *Moore* in context of challenge to state bar disciplinary system).

4

court opinion from Michigan does not call this case law into question, *see* Pls.' Opp'n 7-8, particularly given that no party in that case even disputed that the state had a sufficient, overarching interest in the welfare of children in its foster care system, *see Dwayne B. v. Granholm*, No. 06-13548, 2007 WL 1140920, at *5 (E.D. Mich. Apr. 17, 2007).

As to the third and final *Middlesex* prong—adequate opportunity to raise federal questions—"abstention is appropriate unless state law clearly bars the interposition of the constitutional claims." *Moore*, 442 U.S. at 425-26; *accord J.B.*, 186 F.3d at 1292. Here, Plaintiffs have not disputed the Maine District Court's authority to remedy the issues that they have identified in the context of each of the Named Plaintiffs' cases, and to hear constitutional claims. *Moore*, 442 U.S. at 435 ("We are unwilling to conclude that state processes are unequal to the task of accommodating the various interests and deciding the constitutional questions that may arise in child-welfare litigation.").

While it may be more difficult to obtain precisely the same expansive relief in Maine District Court that Plaintiffs have requested here, that fact does not render the child protective proceeding inadequate for abstention purposes. *See Red Bluff Drive-In, Inc. v. Vance*, 648 F.2d 1020, 1035 (5th Cir. 1981) (concluding that the plaintiffs' inability to present their exact federal claims did not render state proceedings inadequate). The "relevant question is not whether the state courts can do all that Plaintiffs wish they could, but whether the available remedies are sufficient," and the state court's ability to "act to protect children within its jurisdiction" is, to this end, plainly adequate. *31 Foster Children*, 329 F.3d at 1279 (cleaned up); *accord J.B.*, 186 F.3d at 1292; *Joseph A.*, 265 F.3d at 1274 & n.6. Indeed, allowing the Maine District Court to address the issues regarding recordkeeping and psychotropic medications that Plaintiffs allege the GALs "observed firsthand," Pls.' Opp'n 11, rather than withholding them from the court in anticipation

5

of bringing federal litigation,[3] would likely resolve the Named Plaintiffs' concerns, and may well facilitate a full resolution of the matter. *See Moore*, 442 U.S. at 428-30. Abstention therefore remains appropriate.

### B. The GALs Are Improper Next Friends

While Defendants do not contest that it is sometimes appropriate for a federal district court to appoint a Next Friend, that "capacity is not lightly granted to any individual who petitions a federal court to pursue an action on behalf of another." *Sam M. ex rel. Elliott v. Carcieri*, 608 F.3d 77, 90 (1st Cir. 2010). It is a status that cannot, and should not, be granted to Named Plaintiffs' Maine District Court GALs for the host of reasons that Defendants set forth in their motion. *See* Mot. 15-18.

The important issues Defendants highlighted are far from mere "quibbling." Pl.'s Opp'n 1. They highlight the fundamental incompatibility between each GAL's duty in Maine District Court and their obligations as Next Friends in this lawsuit. Indeed, the very fact of serving as Next Friends may disqualify them from continuing to serve as GALs, and Plaintiffs have not even asserted that the GALs have complied with their obligation to notify the Maine District Court of their role in this action. *See* Maine Rules for Guardians Ad Litem 5(i)(5).

Plaintiffs make little effort to address these significant concerns. They simply characterize them as "speculative," and claim that the protective order is a sufficient precaution. *See* Pls.' Opp'n 11. But the mere fact that Defendants' contentions pertain to future events does not render them speculative. As described in Defendants' motion, *see* Mot. 16-17, the high potential for conflict is illustrated both by the nature of this lawsuit and the safeguards set forth in the GAL

---

[3] It is this issue, and not exhaustion *per se*, to which Defendants refer in their motion. *See* Mot. 14-15. Plaintiffs' failure to take advantage of available state remedies also demonstrates a "lack of respect for the State as sovereign," and counsels in favor of abstention. *NOPSI*, 491 U.S. at 369.

rules. Further, Defendants' concerns largely pertain to GALs having to divulge information to other parties in this case, and make decisions about the prosecution of a class action lawsuit, to an extent that is incompatible with each Named Plaintiffs' best interests.

Plaintiffs' minimal engagement with these points is fatal, as "[t]he burden is on the 'next friend' clearly to establish the propriety of his status and thereby justify the jurisdiction of the court." *Whitmore v. Arkansas*, 495 U.S. 149, 164 (1990) (cited favorably in *Sam M.*, 608 F.3d at 89-90). Dismissal is therefore appropriate. *See Developmental Disabilities Advocacy Ctr., Inc. v. Melton*, 689 F.2d 281, 285-87 (1st Cir. 1982) (affirming dismissal where purported next friend was not authorized to bring suit on behalf of minor under Rule 17); *Gibson-Kennedy ex rel. Gibson v. Slutsky*, Civil Action No. 13-4324, 2014 WL 317871, at *3-*4 (E.D. Pa. Jan. 29, 2014) (dismissing for lack of jurisdiction where plaintiff could not serve as next friend), *aff'd sub nom. Gibson-Kennedy v. Slutsky*, 650 F. App'x 122 (3d Cir. 2016); *Bak v. Niagara Rehab. & Nursing Ctr.*, No. 13-CV-215S, 2014 WL 297346, at *5 (W.D.N.Y. Jan. 27, 2014) ("Defendants motions to dismiss are granted on the grounds that Plaintiff lacks standing to bring suit on his mother's behalf and he will not be permitted to sue under Rule 17(c)(2) as her 'next best friend.'").[4]

**C. Plaintiffs' Claims Fail on the Merits**

1. Substantive Due Process

Plaintiffs attempt to diminish the well-established "shocks the conscience" standard, implying it is more forgiving in the foster care context. *See* Pls.' Opp'n 13-14. While no settled law supports such a distinction, *see* Mot. 19-20, even the standard under *Youngberg v. Romeo*, 457

---

[4] The Court can remedy the jurisdictional issue by, in its discretion, appointing alternate Next Friends. *See Sam. M.*, 608 F.3d at 85. But Plaintiffs do not even suggest that the Court should do so. Instead, they assume that the case can and should continue with these GALs as Next Friends, and purportedly "reserve the right to submit additional evidence" at a later date. Pls.' Opp'n 10 n.8. For the reasons set forth above, proceeding in such a fashion, all the while risking conflict in violation of the GAL rules and the very orders appointing each GAL, is untenable.

U.S. 307 (1982), the first half of which Plaintiffs cite, *see* Pls.' Opp'n 14, requires "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment," *Youngberg*, 457 U.S. at 323. The judgment of qualified professionals is, in this context, presumed correct, in order to

> minimize undue interference by the federal judiciary with the internal operations of state institutions, as it is not appropriate for the courts to specify which of several professional acceptable choices should have been made. . . . [T]he Fourteenth Amendment is not a font of tort law to be superimposed upon whatever systems may be administered by the states.

*Connor B. ex rel. Vigurs v. Patrick*, 774 F.3d 45, 54-55 (1st Cir. 2014) (cleaned up) (quoting *Youngberg*, 457 U.S. at 321-22, and *County of Sacramento v. Lewis*, 523 U.S. 844, 848 (1976)).

In an attempt to meet this exceptionally high bar, *see* Mot. 19-20, Plaintiffs present the "recommendations" of various nongovernmental organizations as gospel, *see, e.g.*, Am. Compl. ¶¶ 245-46, 274, and then criticize OCFS's practices based on reports and alleged "admissions" from six years ago, *see, e.g., id*. ¶¶ 223-34, 250.[5]  But in the last several years, OCFS has made "concrete, good faith improvements" to Maine's foster care system, *Connor B.*, 774 F.3d at 57, and it continues to pursue further change, *see* Mot. 4-7, 21-22. The fact that there may remain "deficiencies [that have] not be[en] fully addressed does not establish that there has been a constitutionally cognizable increased risk of class-wide harm, much less that the *Youngberg* standard has been satisfied." *Connor B.*, 774 F.3d at 55. If anything, OCFS' efforts highlight the "'sensitive federalism concerns' at play in institutional reform litigation," *id*. at 57 (quoting *Horne v. Glores*, 557 U.S. 433, 448 (2009)), and underscore why Plaintiffs' allegations are simply an

---

[5] Tellingly, in their Opposition, Plaintiffs do not once reference the 2018 OIG Report—which is based on data from 2014-15—on which they heavily relied in their Complaint.

inappropriate attempt to constitutionalize "aspirational statutory, regulatory, and private standards as to a variety of topics within the overall complex of foster child care," *id*. at 55 (cleaned up).

Plaintiffs' allegations of gaps in care experienced by the Named Plaintiffs fare no better. At best, Plaintiffs allege isolated, albeit serious, violations of policy. *See* Mot. 21. None of these alleged gaps, even if proven to be true, constitute the sort of conscience-shocking, institution-wide deficiencies necessary to state a substantive due process claim.[6]

2. Procedural Due Process

The sufficiency of the procedural protections afforded to the Named Plaintiffs is not at this point a factual dispute, *see* Pls.' Opp'n 20, but a legal question. Defendants in their motion showed that given the uncontested existence of oversight and review mechanisms for foster children who are prescribed psychotropic medications, Plaintiffs have not *alleged* a cognizable violation of their procedural due process rights. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (cleaned up)).

While Plaintiffs have not explicitly identified what *additional* procedural protections they believe are required by the Due Process Clause, their claim primarily boils down to a demand for secondary review triggered by red-flag criteria. Pls.' Opp'n 16, 18. But Plaintiffs have made no attempt to describe the value of additional procedures given those that currently exist.[7] *See*

---

[6] Plaintiffs do not argue that administering psychotropics to minors always violates the constitution. Reciting their risks therefore does not render their substantive due process claim any more plausible. *See* Pl.'s Opp'n 17.

[7] Plaintiffs do not allege, as in *Rodi v. Ventetuolo*, 941 F.2d 22, 29 (1st Cir. 1991), that OCFS has ignored its policies. That said, *Rodi* does not stand for the proposition that failure to follow policy automatically constitutes a violation of due process. *See id*. (allegation that plaintiff spent more than two weeks in segregation without an opportunity to be heard stated a claim for deprivation of due process). The policies of administrative agencies and the requirements of the constitution are not necessarily coextensive. *See DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 202 (1989). And here, unlike the plaintiff in *Rodi*, the Named Plaintiffs can utilize the ongoing oversight of the Maine District Court at any time.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (requiring consideration of "the risk of an erroneous deprivation . . . and the probable value, if any, of additional or substitute procedural safeguards."). Nor have they alleged how greater oversight would have changed—or will change—the medications prescribed to the Named Plaintiffs, particularly given that Plaintiffs' GALs could have sought, and still can seek, judicial review of their medication regimes. *See San Herwins v. City of Revere*, 163 F.3d 15, 19 (1st Cir. 1998) ("[T]here is no denial of *procedural* due process . . . so long as the state provides an adequate means of redress.").[8]

In this vein, Plaintiffs' contention that the Maine District Court is not competent to entertain evidence about medical treatment strains credulity, *see* Pls.' Opp'n 24, not least because that court routinely hears testimony from medical and psychiatric experts when evaluating the care provided by OCFS, often at the request of GALs themselves. *See, e.g.,* 22 M.R.S. §§ 4007(3) (permitting the court to order a physical and/or mental examination); *id.* § 4007(3-A) (providing for the submission of the report of a mental health professional); *id.* § 4071 (setting forth procedure for issuance of medical treatment order). Plaintiffs thus have not stated a plausible procedural due process claim.

3.  AACWA

Contrary to Plaintiffs' contention, it is far from settled law that Plaintiffs can pursue their AACWA claim under Section 1983. Plaintiffs cite *Lynch v. Dukakis*, 719 F.2d 504 (1st Cir. 1983),

---

[8] The unpublished district court case that Plaintiffs cite on this point, *see* Pls.' Opp'n 24-25, is inapplicable because the defendants in that case cited "no legal authority supporting their claim that the juvenile court provides procedural protections with respect to the administration of psychotropic drugs." *M.B. by Eggemeyer v. Corsi*, No. 2:17-cv-04102-NKL, 2018 WL 327767, at *13 (W.D. Mo. Jan. 8, 2018).

but that pre-*Suter*[9] case merely observed that "to the extent that Title IV-E confers rights on individuals, section 1983 is available to remedy violations of those rights." *See Lynch*, 719 F.2d at 512. The *Lynch* court concluded that the requirement for "a case plan documenting the steps taken to identify and secure a permanent home" conferred such a right, such that it was privately enforceable. *Connor B.*, 771 F. Supp. 2d at 168 (citing *Lynch*, 719 F.2d at 510-11); *see also* 42 U.S.C. § 675(1)(E).

Consistent with this understanding of *Lynch*, other case plan requirements in the AACWA remain subject to evaluation under *Blessing v. Freestone*, 520 U.S. 329 (1997), and *Gonzaga University v. Doe*, 536 U.S. 273 (2002), each of which postdates *Lynch*. *See Connor B.*, 771 F. Supp. 2d at 170-71 & n.15; *see also Marr v. Maine Dep't of Human Servs.*, No. CIV. 01-224-B-C, 2002 WL 737651, at *4 (D. Me. Apr. 24, 2002) ("There remains some dispute as to whether the provisions of § 671 other than (a)(15) can be enforced in a private right of action for declaratory and/or injunctive relief."), *aff'd*, 2002 WL 1461826 (July 9, 2002). Accordingly, given that Plaintiffs target different provisions of 42 U.S.C. § 675 than were at issue in *Lynch*, namely the medical record requirements and case review system requirements, Plaintiffs' AACWA claim is properly subject to the *Blessing/Gonzaga* test.[10] And for the reasons set forth in Defendants' motion, *see* Mot. 29-32, it fails that test.

---

[9] While the Supreme Court's reasoning in *Suter v. Artist M.*, 503 U.S. 347 (1992)—that a provision is not unenforceable under Section 1983 merely because it creates a generalized state duty, *id.* at 363—was overturned by Congress, *see* 42 U.S.C. § 1320-a, its holding remains good law. The upshot of Congress's action is simply that *Suter* does not "provide a foolproof shortcut for the private cause-of-action analysis" required under *Blessing/Gonzaga*. *Marr*, 2002 WL 737651, at *3. For this reason, the district court's decision in *Eric L. v. Bird*, 848 F. Supp. 303, 312 (D.N.H. 1994), remains instructive. *See Charlie H. v. Whitman*, 83 F. Supp. 2d 476, 485 (D.N.J. 2000) (citing *Bird* for its conclusion, under the *Blessing* test, that a provision of the AACWA was not privately enforceable).

[10] Regardless of the precise factors considered, *see* Pls.' Opp'n 29 n.19—as of five years ago, the First Circuit continued to use the *Blessing* articulation of the test, *see Colon-Marrero v. Velez*, 813 F.3d 1, 17-20 (1st Cir. 2016); *DeCambre v. Brookline Housing Auth.*, 826 F.3d 1, 10 (1st Cir. 2016)— the *Blessing/Gonzaga* test it is "merely a guide . . . as the ultimate inquiry is one of congressional intent," *Rio Grande*, 397 F.3d at 73.

That said, even if the Court were to rule that Section 1983 is a viable means of enforcing the applicable sections of the AACWA, Plaintiffs have not plausibly alleged a violation of the statute. Defendants explained in detail the deficiencies in Plaintiffs' allegations, including (a) why OCFS policy is consistent with federal law; (b) that Plaintiffs cited outdated studies and statistics; and (c) how the non-conclusory portion of Plaintiffs' allegations bear no connection to the AACWA, or refer to the judgment of doctors and conduct of individuals not under OCFS's employ or control. *See* Mot. 32-34. In response, Plaintiffs merely restate the allegations of their Complaint and fault Defendants for daring to question their sufficiency. *See* Pls.' Opp'n 33-35.

Moreover, to the extent there remain isolated issues with adherence to OCFS policy or the statutes that Plaintiffs cite, the AACWA requires only "substantial conformity," not strict compliance. 42 U.S.C. § 1320a-2a(a). Plaintiffs do not contest this reading of the statute, and the First Circuit's decision in *Connor B.* underscores the *legal* principle that issues like the "gaps in record keeping" that Plaintiffs identify do not constitute "grave statutory error," 774 F.3d at 61-62, never mind a lack of compliance sufficient to warrant far-reaching injunctive relief.

\*             \*             \*

For the reasons stated above, Defendants respectfully request that Plaintiffs' First Amended Complaint be dismissed, and that judgment be entered in Defendants' favor.

Dated: May 28, 2021                                   Respectfully submitted,

                                                     AARON M. FREY
                                                     Attorney General

                                                     /s/ Thomas A. Knowlton
                                                     Thomas A. Knowlton
                                                     Deputy Attorney General

                                                                                                                         Jason Anton
                                                                                                                         Sarah A. Forster
Kevin J. Beal
Assistant Attorneys General

6 State House Station
Augusta, ME  04333-0006
Tel: (207) 626-8800

## CERTIFICATE OF SERVICE

I hereby certify that on the date stated above, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notice of such filing to the Plaintiffs in this matter.

/s/ Jason Anton
Assistant Attorney General