## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE

| | |
|---|---|
| **Bryan C.** and **Henry B.** through their next friend **Michael P. Dixon**; **Trent W.** and **Grayson M.** through their next friend **Taylor S. Kilgore**; and **Neville H.** through his next friend **Sandra Romano-Shain**, for themselves and those similarly situated, | ) )  )  )  ) |
| | ) Civil No. 1:21-cv-00005-NT |
| | ) |
| **Plaintiffs,** | ) |
| **v.** | ) |
| **Jeanne M. Lambrew** in her official capacity as Commissioner of the Maine Department of Health and Human Services; and **Todd A. Landry** in his official capacity as Director of the Maine Office of Child and Family Services, | )  )  ) |
| | ) |
| **Defendants**. | ) |

---

### JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF FORM AND MANNER OF CLASS NOTICE WITH INCORPORATED MEMORANDUM OF LAW IN SUPPORT

The Parties have reached a class action settlement agreement to resolve this lawsuit. The Settlement Agreement (Exhibit 1) is the result of almost two years of careful drafting and negotiation between the Parties, collaborative mediation with the Honorable Magistrate Judge John C. Nivison, and consultation with clients and subject matter experts.

The Parties hereby jointly move the Court to enter an order granting preliminary approval of the Class Action Settlement Agreement, certifying the Class and appointing Class Counsel, setting a hearing for final approval of the Class Action Settlement Agreement, and authorizing the form and manner of the Notice of the Class Action Settlement (Exhibit 2). The Order would preliminarily approve the Settlement Agreement and allow the Parties to direct notice to the Class to initiate the final settlement approval process.

## FACTS

### I.    OVERVIEW OF THE LITIGATION

Plaintiffs are hundreds of children who are or will be in Maine foster care custody and who are or will be prescribed or administered one or more psychotropic medications while in state care. In January 2021, after an extensive 22-month investigation,[1] Named Plaintiff children brought a class action litigation through their adult Next Friends against the Commissioner of the Maine Department of Health and Human Services ("DHHS") and the Director of the Maine Office of Child and Family Services (together, "Defendants"), in their official capacities only. *See* Initial Compl., ECF No. 1; *see also* Second Am. Compl. (the "Complaint"), ECF No. 45. The Complaint alleges Fourteenth Amendment substantive and procedural due process violations for the state's alleged inadequate monitoring and oversight of the administration of psychotropic medications to

---

[1] *See* Declaration of Marissa C. Nardi of Children's Rights ("Nardi Decl.") ¶ 4. This investigation included a close examination of Maine's child welfare system and Defendants' policies and practices regarding medical records, informed consent, and secondary review. *Id.* During this investigation, Plaintiffs' Counsel interviewed dozens of knowledgeable people across the state; spent significant hours obtaining, compiling, and analyzing data, reports, and other relevant information; and conducted a thorough review of First Circuit rulings on the applicable constitutional and statutory law. *Id.*

children in foster care, and the Adoption Assistance and Child Welfare Act of 1980 ("AACWA") statutory violations for the state's alleged failure to keep medical records up to date and to timely deliver them to each foster care placement. Complaint, ECF No. 45 ¶¶ 280-85, 294-97. Plaintiffs sought declaratory and injunctive relief to remedy these alleged issues by implementing systemic practices and policies to ensure: (1) maintenance and timely dissemination of up-to-date medical records; (2) a meaningful informed consent procedure for psychotropic medications; and (3) a secondary review system to guard against outlier and high-risk prescription practices before and after psychotropic medication is prescribed. *Id.* ¶ 298. Defendants disputed the allegations and moved to dismiss the Complaint in April 2021 (ECF No. 25), which Plaintiffs opposed that May (ECF No. 36). The Court ultimately allowed the litigation to proceed past the motion to dismiss phase with all causes of action intact. *See* Order on Defs.' Mot. to Dismiss, ECF No. 43.

The Parties then engaged in months of discovery that allowed them to understand the scope of the issues and ultimately craft solutions. *See* Nardi Decl. ¶ 6. The discovery included substantial written discovery. *Id.* Both Parties propounded and responded to dozens of requests for production and interrogatories. Defendants produced thousands of pages of the state's Named Plaintiff case files and additional documents in Defendants' possession about Defendants' policies and practices, which Plaintiffs reviewed. *Id.* In turn, Plaintiffs reviewed and produced thousands of pages of other documents concerning the Named Plaintiffs and Next Friends in Plaintiffs' possession. In addition, the three Next Friends sat for depositions, and Plaintiffs worked on the development of expert reports. *Id.*

In early 2022, while continuing with active discovery, the Parties initiated settlement negotiations under the direction and guidance of Judge Nivison. *See* Order Setting Settlement Conference, ECF No. 67 (February 9, 2022 order setting an initial settlement conference before Judge Nivison on April 11, 2022). In March and April 2022, the Parties exchanged terms sheets and

2

prepared detailed mediation statements for Judge Nivison. *See* Nardi Decl. ¶ 7. Starting in April 2022, the Parties began mediating with Judge Nivison on a monthly or roughly bi-monthly basis while continuing with discovery. *Id.*[2] In July 2022, the Parties agreed to a stay of the litigation to focus all their efforts on mediation. *See* Order Staying Case, ECF No. 88. Over the next year and a half, the Parties participated in 10 joint sessions with Judge Nivison. *See* ECF Nos. 72, 80, 87, 94, 99, 103, 106, 108, 112, and 114 (minute entries reflecting settlement conferences held with Judge Nivison). During this same time, the Parties engaged in countless direct discussions. *See* Nardi Decl. ¶¶ 7-8. The Parties also had individual and joint meetings with subject matter consultants with knowledge of psychotropic medication oversight as well as national and local prescribing practices. *See id.*; *see also* Ex. 1, Settlement Agreement § II.

After successfully completing negotiations of all substantive and structural elements of the Settlement Agreement, all Parties executed the Settlement Agreement on March 1, 2024. *See* Ex. 1, Settlement Agreement.

## II.    SUMMARY OF THE SETTLEMENT AGREEMENT

The Settlement Agreement resolves all claims against Defendants brought by Plaintiffs on behalf of a proposed Settlement Class. It explicitly contemplates resolution of the pending claims, with the Court retaining jurisdiction for purposes of enforcing the terms of the Settlement Agreement. Ex. 1, Settlement Agreement §§ IV.1.B, 4.B. Plaintiffs continue to believe that their substantive and procedural due process and AACWA claims are meritorious. Defendants continue to believe that they would prevail in a trial on the merits. But both sides recognize the risks, burdens and uncertainties inherent to litigation.

---

[2] *See also* Decl. of John A. Woodcock in Supp. of Pls.' Opp'n to Defs.' Mot. for a Protective Order, ECF No. 85 (reflecting discovery exchanged in the first half of 2022 and describing a dispute that arose related to the discovery).

Above all, the Settlement Agreement shows that the Parties share significant common ground: a joint commitment to ensuring that all children in foster care in Maine safely receive the medical and mental health care they need, and that relevant actors in the foster care system oversee (or have an opportunity to raise issues regarding) the administration of psychotropic medications. As a result, the Settlement Agreement addresses – in a detailed and specific manner – the issues raised in the Plaintiffs' Complaint. The commitments in the Agreement include:

- Timely preparation and dissemination of a portable health record upon placement that moves with the child from placement to placement and is routinely updated with critical medical, mental health, and behavioral health information – which will be gathered from improved collection and appointment procedures as well as incorporated into the child's case plan. Ex. 1, Settlement Agreement § III.1.
- The creation of an informed consent process that includes all classes of psychotropic medication, informed consent by designated adults and by youth ages 14 or older, including a process to be heard in the event of a dispute, education and training to staff and resource parents, procedures for emergencies, and a detailed informed consent form including critical information. *Id.* § III.2.
- The creation of a psychiatric Clinical Review Team to conduct reviews – including both prospective reviews of psychotropic medications before they are administered and retrospective reviews after they are administered. *Id.* § III.3.

## ARGUMENT

## III.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT AGREEMENT

### 1.    Legal Standard for Preliminary Approval of a Class Action Settlement Agreement

"The claims, issues, or defenses of a certified class — or a class proposed to be certified for purposes of settlement — may be settled . . . only with the court's approval." FED. R. CIV. P. 23(e); *see also* Ex. 1, Settlement Agreement § IV.4.A. (agreeing to jointly seek class certification for settlement purposes). This Court has explained that "[u]nder Federal Rule of Civil Procedure 23(e), a

two-step notice-then-approval procedural framework applies to [evaluating] proposed class settlements." *Anderson v. Team Prior, Inc.*, No. 2:19-cv-00452-NT, 2022 WL 1156056, at *5 (D. Me. Apr. 19, 2022) (Torresen, J.). First, counsel submits the terms of the proposed settlement to the court, as the Parties have done herein, and the court makes a preliminary fairness evaluation of the settlement. *See* Manual for Complex Litigation, Fourth, § 21.632. Second, if preliminary approval is granted, the court directs issuance of the notice of the settlement, solicits comments and objections from class members and interested parties, and holds a formal fairness hearing to determine whether the proposed settlement is fair, reasonable, and adequate. *Id.* §§ 21.633-35.

During this first stage of the settlement approval process, "the court's role is limited to deciding 'whether the proposed settlement appears to fall within the range of possible final approval.'" *Michaud v. Monro Muffler Brake, Inc.*, No. 2:12-cv-00353-NT, 2015 WL 1206490, at *8 (D. Me. Mar. 17, 2015) (Torresen, J.) (citation omitted). Therefore, at this time, the Court reserves "its determination as to the proposed settlement's fairness, reasonableness, and adequacy until after the fairness hearing." *Id.* Instead, the Court "direct[s] notice [and preliminarily approves the settlement] if 'giving notice is justified by the parties' showing that the court will likely be able to' approve the settlement proposal and certify the class for purposes of judgment on the proposal." *Anderson*, 2022 WL 1156056, at *5. This Court has found that "[a] proposed settlement of a class action may be given preliminary approval where it is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies (such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys), and where the settlement appears to fall within the range of possible approval." *Id.* (quotation marks and citations omitted). "If the parties negotiated at arm's length and conducted sufficient discovery, the [] court must presume the settlement is reasonable."

*In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32–33 (1st Cir. 2009) (citing *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996)).

In addition, determinations regarding the reasonableness of a settlement agreement should be made in light of the "strong public policy in favor of settlements." *See P.R. Dairy Farmers Ass'n. v. Pagan*, 748 F.3d 13, 20 (1st Cir. 2014) (quotation marks and citation omitted). The First Circuit has stressed the "great favor" that settlement agreements enjoy with the courts "as a preferred alternative to costly, time-consuming litigation." *Fid. & Guar. Ins. Co. v. Star Equip. Corp.*, 541 F.3d 1, 5 (1st Cir. 2008) (quotation marks and citation omitted). This is particularly true for class action lawsuits such as this one, affecting hundreds of children. *See, e.g., In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 259 (D.N.H. 2007).

## 2. The Settlement Agreement Should be Preliminarily Approved

The Parties' Settlement Agreement should be preliminarily approved and the Court should direct notice to the Class based on a finding that it will likely be able to approve the Proposed Settlement as fair, reasonable, and adequate. *Miller v. Carrington Mortg. Servs., LLC*, No. 2:19-cv-00016-JDL, 2020 WL 2898837, at *4 (D. Me. June 3, 2020), R. & R. adopted, 2020 WL 3643125 (July 6, 2020) (describing first- and second-step procedures under Rule 23(e)). The proposed Settlement meets that standard because (i) "the class representatives and class counsel have adequately represented the class"; (ii) "the proposal was negotiated at arm's length"; (iii) "the relief provided for the class is adequate, taking into account" factors including, "the costs, risks, and delay of trial and appeal"; and (iv) "the proposal treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2). The discovery conducted prior to settlement negotiations, extensive arm's length mediation process overseen by Judge Nivison, and the risks and expenses inherent in proceeding to trial all point to a "serious, informed, non-collusive" and fair Settlement Agreement. *Anderson*, 2022 WL 1156056, at *5 (citation omitted).

First, the Class representatives and Class Counsel have adequately represented the proposed Settlement Class. After litigating Defendants' motion to dismiss in 2021, the Parties engaged in formal discovery in 2022. *See* Nardi Decl. ¶ 7; *see also* Scheduling Order, ECF No. 56. Discovery began with the production of thousands of pages of documents by each side in connection with their respective initial disclosures. Thereafter, the Parties exchanged tens of thousands of documents in response to document requests as well as interrogatory responses. While Defendants completed the depositions of the three named Next Friends, the Parties litigated a discovery dispute regarding the scope of non-party information to which Plaintiffs were entitled in response to their document requests. *See, e.g.*, Defendants' Motion for Protective Order, ECF No. 79. The Parties engaged in multiple meet and confer sessions during the course of discovery, with Defendants supplementing one production, and Plaintiffs providing two supplemental responses to Defendants' Requests for Production of Documents. *See* Nardi Decl. ¶ 6; *supra* pp. 3-4 (discussing discovery). In addition to the information exchanged during formal discovery, the Parties confidentially shared information during settlement negotiations. Plaintiffs investigated for over a year prior to the lawsuit and conducted informal discovery throughout the litigation. Nardi Decl. ¶¶ 4, 6. The work done by Plaintiffs' Counsel in litigating this action and the Next Friends in responding to discovery supports a finding that "the class representatives and class counsel have adequately represented the class." FED. R. CIV. P. 23(e)(2)(A).

Second, the negotiations culminating in the Settlement Agreement support a finding that the proposal was negotiated at arm's length, making this Court's preliminary approval of the Settlement Agreement appropriate. Beginning in 2022, the Parties engaged in arm's length, non-collusive negotiations over the substance and structure of the Settlement Agreement. Nardi Decl. ¶¶ 7-8. Beginning in April 2022, the Parties participated in 10 judicial settlement conferences with Judge Nivison's active involvement. The detailed negotiations eventually resulted in: (i) new practices for

collection and dissemination of health information critical to the informed consent process, a new informed consent form for designated adult consenters and older youth, and a new system of review of new outlier triggers by a new psychiatric review team; (ii) detailed performance metrics and benchmarks; and (iii) a time-limited structure settling the underlying litigation with an Implementation Reviewer to monitor implementation. Leveraging the expertise of Plaintiffs' outside consultants and Defendants' pediatric, behavioral health, and medical record professionals, the Parties' Settlement Agreement reflects creative solutions to the Parties' initially divergent views on appropriate measures to address matters of mutual concern. *See id.* ¶ 8. The Settlement Agreement addresses key issues outlined in Plaintiffs' Complaint, provides for a third-party to serve as Implementation Reviewer of Defendants' progress in relation to certain Performance Criteria, establishes a fixed duration subject to compliance, and sets a clear timeline for implementation and enforcement, if necessary. *See* Ex. 1, Settlement Agreement §§ IV.2.-3., 4.B.; *supra* Section II.

Third, "the relief provided for the class is adequate, taking into account" factors including, "the costs, risks, and delay of trial and appeal." FED. R. CIV. P. 23(e)(2)(C). Proceeding to trial on Plaintiffs' systemic claims addressing Defendants' oversight of the administration of psychotropic medication to children in foster care – a claim of first impression in Maine – would be expensive, complex, and unpredictable for both Parties. *See* Order on Defendants' Motion to Dismiss, ECF No. 43 at 26-27.[3] If this case does not settle, then the Parties would continue fact discovery, file their expert reports, and brief class certification. Potential dispositive motion practice, as well as potential challenges to either side's expert witnesses pursuant to *Daubert*, would follow the close of discovery and ultimately there would be a trial in this matter. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). In contrast, the value of immediate relief addressing Plaintiffs' claims and the removal of

---

[3] In *Connor B.*, the First Circuit also sidestepped the question of what standard applies to a substantive due process claim in the foster care context. *See Connor B. ex rel. Vigurs v. Patrick*, 774 F.3d 45, 54 (1st Cir. 2014).

uncertainty and the demand on limited resources for Defendants is significant. *See Medoff v. CVS Caremark Corp.*, No. 09-cv-554-JNL, 2016 WL 632238, at *5 (D.R.I. Feb. 17, 2016) (explaining that settlement "eliminates those expenses and, perhaps more importantly, the uncertainties inherent in taking this case to trial").

The Settlement Agreement fairly resolves all critical issues in the Complaint through carefully crafted reforms. *See supra* Section II; Nardi Decl. ¶ 8; Declaration of John A. Woodcock of Bernstein Shur ("Woodcock Decl.") ¶ 8; Ex. 1, Settlement Agreement § IV.4.B. The Settlement Agreement ensures systemic oversight of the administration of psychotropic medications for the proposed Class. The system-wide nature of all the reforms ensures that the Settlement Agreement treats all children in the system, and therefore all Class Members, fairly and equitably relative to each other – which goes to the fourth factor. *See* FED. R. CIV. P. 23(e)(2)(D). Waiting for the completion of prolonged litigation before implementing changes to Defendants' oversight of the administration of psychotropic medications to Class members – per Plaintiffs' allegations – risks harm to Class members relating to potential adverse consequences inherent in the psychotropic medications at issue. Notwithstanding Defendants' denial of the factual allegations and their liability, the Settlement Agreement reflects a considered, detailed, and reasonable resolution to a complex issue. Settling now instead allows Class members to experience the benefits of the commitments in the Settlement Agreement as soon as possible. This Court should, therefore, grant preliminary approval of the Settlement Agreement.

## IV.    THE PLAINTIFF CLASS SHOULD BE PROVISIONALLY CERTIFIED

The proposed "Plaintiff Class" consists of the Named Plaintiffs and all of the children who are or will be in Defendants' foster care custody and who are or will be prescribed one or more psychotropic medications while in state care (also referred to as the "Settlement Class"). Ex. 1, Settlement Agreement §§ I.12, IV.4.A; *see also* Complaint ¶ 160. The Manual for Complex Litigation,

Fourth, instructs, "Rule 23(a) and (b) standards apply equally to certifying a class action for settlement or for trial . . . ." . Certifying a Settlement Class, Ann. Manual Complex Lit. § 21.132 (4th ed.) (noting exception for actions proceeding under FED. R. CIV. P. 23(b)(3)(D), which does not apply here). In the context of settlement, the Court must find that the proposed class meets the prerequisites of Rule 23(a): (1) "the class is so numerous that joinder of all members is impracticable," (2) "there are questions of law or fact common to the class," (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class," and (4) "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a). In addition, the class must satisfy one of the requirements of Rule 23(b), which here is Rule 23(b)(2): that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). As set forth below, Plaintiffs satisfy each of the requirements of Rule 23(a), and certification is proper under Rule 23(b)(2), because this case involves system-wide injunctive reforms impacting the class of children in the foster care system as a whole.

### 1. Plaintiffs Satisfy the Numerosity Requirement

The Class here easily satisfies the numerosity requirement. Under Rule 23(a)'s numerosity requirement, the class must be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Courts in the First Circuit have generally found that a class of 40 or more individuals satisfies the numerosity requirement. *See Fitzmorris v. New Hampshire Dep't of Health & Hum. Servs. Comm'r Lori Weaver*, No. 21-cv-25-PB, 2023 WL 8188770, at *9 (D.N.H. Nov. 27, 2023) (explaining numerosity in the First Circuit is a "low threshold"); *Michaud*, 2015 WL 1206490, at *2; *Connor B. v. Patrick*, 272 F.R.D. 288, 292 (D. Mass. 2011); *cf. S.S. v. Springfeld*, 318 F.R.D. 210, 222-23 (D. Mass. 2016) (finding that proposed class of "[m]ore than two hundred" class members could

"certainly have established numerosity" in light of the presumption that 40 individuals is sufficient); *DeRosa v. Massachusetts Bay Commuter Rail Co.*, 694 F. Supp. 2d 87, 98 (D. Mass. 2010) (numerosity met with approximately 110 class members).

The Class here consists of far more than 40 Class members. Approximately 2,500 children were in the legal custody of DHHS as of December 2023,[4] and approximately 500 children in the foster care system at any given time are prescribed one or more psychotropic medications.[5] Since the Settlement Class includes not just those children already in the foster care system and receiving psychotropic medications, but also those children who will later enter the system and who will later be prescribed psychotropic medications, there will likely continue to be hundreds of children in the Settlement Class.

In the numerosity analysis, courts also consider judicial economy and the plaintiffs' ability to bring individual suits. *See Curtis v. Comm'r, Maine Dep't of Hum. Servs.*, 159 F.R.D. 339, 340-41 (D. Me. 1994). This suit seeks only injunctive and declaratory relief that will inure to the benefit of all members of the Class, so judicial economy favors certification. As in *Curtis*, it would be impracticable to require hundreds of minors to file individual suits about systemic harms when they could instead proceed with one litigation. *See id.* (when considering "judicial economy and the ability of the members to institute individual suits," joinder of 500 benefits recipients who were class members was impracticable).

2.  **Plaintiffs Satisfy the Commonality Requirement**

The commonality requirement asks whether "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). Plaintiffs must show that a class action is capable of "generat[ing] common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.

---

[4] *Child Welfare Data Dashboard*, Maine Dep't of Health & Hum. Servs., https://www.maine.gov/dhhs/ocfs/data-reports-initiatives/child-welfare (accessed Jan. 26, 2024).
[5] Defs.' Response to Pls.' First Set of Interrogatories ¶ 1, Feb. 23, 2022.

338, 350 (2011) (emphasis in original) (internal citations omitted). "The First Circuit has recognized that such 'common answers typically come in the form of a particular and sufficiently well-defined set of allegedly illegal policies or practices that work similar harm on the class plaintiffs.'" *Fitzmorris*, 2023 WL 8188770, at *15. These serve as "the 'glue' that unites Plaintiffs' claims." *Connor B. v. Patrick*, 278 F.R.D. 30, 34 (D. Mass. 2011)*; see also Maine Ass'n of Retirees v. Bd. of Trustees of Maine Pub. Emps. Ret. Sys.*, No. 1:12-CV-59-GZS, 2012 WL 5874783, at *2 (D. Me. Nov. 20, 2012) ("[T]here is commonality among the class members [where] each class member claims that Maine's 2011 Amendment amounts to a unconstitutional deprivation of the cost-of-living adjustments."); *Risinger v. Concannon*, 201 F.R.D. 16, 19-20 (D. Me. 2001); *Gonzalez v. XPO Last Mile, Inc.*, 579 F. Supp. 3d 252, 260-61 (D. Mass. 2022). As courts in this Circuit have recognized post-*Wal-Mart*, members of the proposed class need not share every fact in common as long as there is at least one common issue among them. *See In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 27 (D. Me. 2013) ("While the losses of each class member may not be identical in amount or type, Hannaford's action or inaction that allegedly produced the loss is the same, and the economic injuries are similar. Thus, there are questions of law and fact common to the class, and the commonality requirement is satisfied.").

The commonality requirement is met here because Defendants have uniform system-wide policies and practices concerning the monitoring and oversight of the administration of psychotropic medications to Class members that apply equally to each member of the Plaintiff Class. *See* Compl., ECF No. 45 ¶¶ 217-79; *M.B. v. Corsi*, 327 F.R.D. 271, 278-80 (W.D. Mo. 2018) (commonality requirement met in foster care psychotropics reform class action where system-wide policies and practices on psychotropics uniformly subjected putative class members to a substantial risk of serious harm). Each member of the Plaintiff Class is in foster care, and they are equally

subject to practices and policies that apply to Maine's care system, so their claims are capable of class-wide resolution in one stroke. *See id.*

The three principal alleged factual issues underlying Plaintiffs' claims each show commonality among the Plaintiff Class.[6] The first principal fact issue is Defendants' medical record practice, including Defendants' alleged failure to maintain complete, current, and reasonably accessible medical records, including medication history, and to provide these records to foster caregivers and health care providers. *See* Compl., ECF No. 45 ¶¶ 170, 236-53. The second issue focuses on the informed consent process, including Defendants' alleged failure to ensure that adequate informed consent with adequate notice and a meaningful opportunity to be heard is obtained before the child is administered any psychotropic medications. *See id.* ¶¶ 170, 254-73. The third issue centers on Defendants' oversight of outlier and high-risk prescription practices, specifically whether Defendants allegedly fail to operate a statewide secondary review system capable of timely identifying and addressing outlier prescribing practices to assure the safe administration of psychotropic medication or to provide for periodic review or reconsideration of the prescription and administration of such medication. Plaintiffs allege that each of these three main issues applies to the Plaintiff Class as a whole. *See id.* ¶¶ 274-79.

As a result of these three main factual issues, the Class members also share the legal questions of whether these challenged policies and practices violate their constitutional substantive due process rights, constitutional procedural due process rights, or statutory rights under AACWA. These questions can all be answered on a class-wide basis. Moreover, children in foster care asserting similar claims as the Plaintiffs here have established commonality and class certification in similar litigations. *See, e.g.*, *M.B.*, 327 F.R.D. at 280.

---

[6] Defendants dispute Plaintiffs' allegations. *See* Ex. 1, Settlement Agreement § IV.4.C.

### 3.  Plaintiffs Satisfy the Typicality Requirement

Rule 23(a)(3) requires "that the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). Typicality is satisfied when the representative's "injuries arise from the same events or course of conduct as do the injuries of the class and when plaintiff's claims and those of the class are based on the same legal theory." *Michaud*, 2015 WL 1206490, at *3 (Torresen, J.) (citation omitted). "The claims of the class representative and the class overall must share essential characteristics, but they need not be precisely identical." *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 338 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015).

The Named Plaintiffs' claims arise from the same events and course of conduct as the claims of the Class: they were all in state custody, subject to the administration of psychotropic medications while in foster care, and subject to the alleged harms and risk of harm stemming from the same policies and practices applicable to children in foster care concerning the monitoring and oversight over psychotropic medications. The Named Plaintiffs' claims are also based on the same legal theories as those of the Class; namely that Defendants' policies and practices allegedly (1) violate their substantive due process right to be free from harm while in state custody, (2) violate their procedural due process right to be free from the unnecessary administration of medical treatment without due process of law, and (3) deprive them of their rights under AACWA. *See Van Meter v. Harvey*, 272 F.R.D. 274, 283 (D. Me. 2011) (typicality established where the named plaintiffs fit the class definition and asserted the same legal claims as the other class members, which were based on a common course of alleged conduct by DHHS); *M.B.*, 327 F.R.D. at 281 (typicality established where claims asserted that the state was obligated to provide additional safeguards against the improper administration of psychotropic medications to children in foster care, "an issue that equally concern[ed] all of the named plaintiffs and the members of the proposed class"). Thus, Rule 23(a)'s typicality requirement is satisfied.

**4.  Plaintiffs and Their Counsel Will Adequately Represent the Class**

The Class representatives and Class Counsel satisfy Rule 23(a)(4) because they will continue to "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). The adequacy requirement is met where "the interests of the representative party [do] not conflict with the interests of any of the class members," and where the representatives and counsel are "qualified, experienced, and able to vigorously conduct the proposed litigation." *Gomes v. Acting Sec'y., U.S. Dep't of Homeland Sec.*, 561 F. Supp. 3d 93, 102 (D.N.H. 2021) (quoting *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)). Plaintiffs satisfy both elements here.

First, Named Plaintiffs, through their Next Friends, are committed to protecting the interests of the proposed Class members, as demonstrated through their substantial efforts throughout this litigation and the Next Friends' assistance with the Settlement Agreement on their behalf. Nardi Decl. ¶¶ 4-8. Their incentives do not conflict, because Named Plaintiffs and Class members share the same claims, arising out of the same course of conduct by Defendants, and they all desire to improve Defendants' policies and practices – which apply equally to each of them, obviating any potential conflict of interest between them. *See In re Nexium (Esomeprazole) Antitrust Litig.*, 297 F.R.D. 168, 172 (D. Mass. 2013), *aff'd sub nom., In re Nexium Antitrust Litig.*, 777 F.3d 9 (1st Cir. 2015) ("A showing of an alignment of incentives between the class and the class representatives can sufficiently overcome a challenge on conflict of interest grounds."). Further, each Next Friend, on behalf of the Named Plaintiffs whom he or she represents, is dedicated to improving Defendants' policies and practices, which pose the same risk of harm to Plaintiffs and other Class members. Indeed, each Next Friend sat for depositions in this case and has been involved in the settlement negotiations. Nardi Decl. ¶¶ 6, 8.

Second, Plaintiffs' Counsel are deeply committed to representing the Class, have demonstrated their willingness to vigorously pursue the claims brought here, and have substantial

experience in handling complex litigations, including federal class actions and suits on behalf of children in state custody asserting claims similar to those here. Nardi Decl. ¶¶ 4-6, 10-12; Woodcock Decl. ¶¶ 2-7. For instance, Plaintiffs' Counsel Children's Rights is a non-profit national legal advocacy organization that is recognized for its extensive record of representing children in foster care and litigating both constitutional and statutory claims seeking declaratory and injunctive relief. *See, e.g.*, *Connor B.*, 272 F.R.D. at 297 ("Children's Rights' attorneys have served as class counsel on much of the major child welfare litigation in the United States. The attorneys at Children's Rights have years of experience litigating similar class actions across the country, asserting constitutional and statutory claims on behalf of children in foster care to obtain system-wide injunctive and declaratory relief."); Nardi Decl. ¶¶ 4, 11-12. Plaintiffs' Counsel Bernstein Shur, a New England based law firm, also has vast experience in complex federal litigation, including class action lawsuits, with local expertise in the state of Maine. *See* https://www.bernsteinshur.com/; Woodcock Decl. ¶¶ 2, 6; Nardi Decl. ¶ 5. Accordingly, Rule 23(a)'s adequacy requirement is met.

## V.    THE COURT SHOULD APPOINT PLAINTIFFS' COUNSEL AS CLASS COUNSEL

Federal Rule of Civil Procedure 23(g) requires that, when certifying a case as a class action, the Court must appoint class counsel. The Rule requires that, when appointing class counsel, the Court must consider: (1) counsel's work in identifying or investigating claims; (2) counsel's experience in handling the types of claims asserted; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. FED. R. CIV. P. 23(g)(1)(A); *see also Michaud*, 2015 WL 1206490, at *5 (appointing class counsel in the context of settlement where proposed class counsel had sufficient experience and had committed significant resources to represent Plaintiffs and where the Court did not perceive any conflicts that would prevent proposed class counsel from fairly and adequately representing the interests of the classes).

The Parties respectfully request that the Court appoint Plaintiffs' Counsel as Class Counsel for purposes of approval and administration of the proposed Settlement. Plaintiffs' Counsel have dedicated substantial work to identifying and prosecuting the claims of the putative Class thus far, and are dedicated to ensuring the case will continue to receive the necessary focus and resources to protect the rights of Class members. Nardi Decl. ¶¶ 4-6, 10; Woodcock Decl. ¶ 2-7. The proposed Class Counsel have extensive experience in, and knowledge of, complex and class action litigation in Maine and nationally, as well as in representing youth in the child welfare system. Nardi Decl. ¶¶ 2-3, 5, 11-12; Woodcock Decl. ¶¶ 2, 7; *see also supra* Section IV.4. Plaintiffs' Counsel, and in particular Plaintiffs' private law firm Counsel of Bernstein Shur, have committed significant resources to representing the Class and will continue do so as needed. Nardi Decl. ¶ 10; Woodcock Decl. ¶¶ 6-7. Accordingly, Plaintiffs' Counsel meets the requirements under Rule 23(g) and respectfully requests appointment as Class Counsel.

## VI.   THE PROPOSED CLASS NOTICE AND NOTICE PLAN SHOULD BE APPROVED AND THE COURT SHOULD ESTABLISH A SCHEDULE FOR FINAL APPROVAL

Rule 23 provides that for a class "certified under Rule 23 . . . (b)(2), the court may direct appropriate notice to the class" "in a reasonable manner." FED. R. CIV. P. 23(c)(2)(A), 23(e)(1)(B). "Notice meets Rule 23(e) and due process requirements if it is reasonably calculated to reach the class members and inform them of the existence of and the opportunity to object to the settlement." *Nilsen v. York Cnty.*, 382 F. Supp. 2d 206, 210 (D. Me. 2005).[7]

---

[7] While Rule 23 requires that reasonable efforts be made to reach all class members, it does not require actual notice to each class member. *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). A class settlement notice satisfies due process if it contains a summary sufficient to "apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections." *UAW v. GMC*, 497 F.3d 615, 629 (6th Cir. 2007) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). Notice is a summary, not a complete source of information. *See, e.g.*, *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999); *In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 145, 170 (2d Cir. 1987); *Mangione v. First USA Bank*, 206 F.R.D. 222, 233 (S.D. Ill. 2001).

The Parties have agreed to a Notice that comports with these requirements. The Notice summarizes the litigation and the Proposed Settlement Agreement, provides instructions on how to obtain full copies of the Settlement Agreement, and advises recipients on what to do if they have questions. *See* Ex. 2, Notice at 1-4. The Notice describes the procedure for those who wish to be heard in favor of or in opposition to the Settlement Agreement, and it includes a placeholder to specify the time and place of the fairness hearing once that date is set by the Court. *See id.* at 3-4. In addition, the form of the Notice, at just four pages, is clear and in plain language for Class members, their representatives, and other local advocates who may be interested in its terms. It is similar to other notices directed at foster care populations that have been approved. *See, e.g., M.B. v. Tidball*, No. 2:17-cv-04102, Notice of Proposed Class Action Settlement, ECF No. 280-2 (W.D. Mo. July 8, 2019), and Order Granting Prelim. Approval, ECF No. 282 (July 15, 2019). The Parties have also agreed to a detailed plan for reasonable dissemination of the Notice. *See* Ex. 2 at 5-6 (Notice Addendum setting forth the proposed manner of notice). The Parties' proposal includes, among other things, posting the Notice in various locations that the Class members or their representatives are likely to frequent, and sending the Notice directly to placement providers, parents, Guardians ad Litem for Class members, and older Class members in independent or transitional living placements. *Id.* Courts have found this sort of approach to be reasonable in other cases with 23(b)(2) classes like this one on behalf of youth in the foster care system. *See, e.g., M.B. v. Tidball*, No. 2:17-cv-04102, ECF No. 282 at 4-6 (W.D. Mo. July 15, 2019) (approving notice in similar foster care psychotropic case using similar notice methods, including notice posted on agency's website, emailed to case managers, posted in offices, and sent to parents, foster caregivers, older youth, and congregate care and group homes); *M.B. v. Howard*, No. 2:18-cv-02617, ECF No. 140 at 5-8 (D. Kan. Sept. 9, 2020) (approving similar notice in foster care case emailed to agency's staff, posted conspicuously in main offices, and sent to parents, foster caregivers, older youth, and congregate care and group homes).

Accordingly, the Notice comports with Rule 23 and due process requirements, and it should be approved.

The Parties further request that the Court set a schedule for notice to the Class and final approval of the Settlement Agreement as follows:

| Event | Date |
|---|---|
| Court's Order on Preliminary Approval | To be determined by the Court |
| Parties' Deadline for Completing Notice to the Class | 6 weeks after the Court's Order of Preliminary Approval |
| Joint Motion for Final Settlement Approval; and Plaintiffs' Motion for Reimbursement of Attorneys' Fees, Costs, and Expenses | 4 weeks after notice complete |
| Objection Deadline; and Deadline for Class Members' Notification of Intent to Appear at the Fairness Hearing | 6 weeks after notice complete |
| Plaintiffs to Submit to the Court all Submissions in Support of or in Objection to the Settlement Agreement Pursuant to the Order of Preliminary Approval; and Parties' Response(s) to Submissions in Support of or in Objection to the Settlement Agreement Pursuant to the Order of Preliminary Approval (if any) | 2 weeks after Objection Deadline |
| Fairness Hearing | To be determined by the Court |

## CONCLUSION

For the foregoing reasons, the Parties jointly move the Court for an order granting preliminary approval of the Settlement Agreement; provisionally certifying the Class and appointing Children's Rights and Bernstein Shur as Class Counsel; approving the form and manner of the Notice of Proposed Class Action Settlement; and setting the deadlines and a hearing date proposed herein for the purpose of deciding whether to grant final approval of the Settlement Agreement.

Dated: March 1, 2024

Respectfully submitted,

BERNSTEIN, SHUR, SAWYER & NELSON, P.A.

/s/ John A. Woodcock III                    .

John A. Woodcock III
Eben M. Albert
100 Middle Street
PO Box 9729
Portland, ME 04101
(207) 774-1200
jwoodcock@bernsteinshur.com
ealbert@bernsteinshur.com


CHILDREN'S RIGHTS

/s/ *Marissa C. Nardi*                          .
Marissa C. Nardi (admitted *pro hac vice*)
Samantha Bartosz (admitted *pro hac vice*)
Stephen Dixon (admitted *pro hac vice*)
Claire R. Glasspiegel (admitted *pro hac vice*)
Madeleine M. Kinney (admitted *pro hac vice*)
88 Pine Street, Suite 800
New York, New York 10005
(212) 683-2210
mnardi@childrensrights.org
sbartosz@childrensrights.org
sdixon@childrensrights.org
cglasspiegel@childrensrights.org
mkinney@childrensrights.org

**ATTORNEYS FOR PLAINTIFFS**


AARON M. FREY
Attorney General

/s/ *Sean Magenis*                          .
Sean Magenis
Assistant Attorney General
6 State House Station
Augusta, ME 04333
(207) 626-8830
Sean.D.Magenis@maine.gov

**ATTORNEYS FOR DEFENDANTS**

20