# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| BRYAN C., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Docket No. 1:21-cv-00005-NT |
| | ) |
| SARA GAGNÉ-HOLMES in her official capacity as Acting Commissioner of the Maine Department of Health and Human Services, and BOBBI JOHNSON in her official capacity as Director of the Maine Office of Child and Family Services,[1] | ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

## ORDER ON JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF FORM AND MANNER OF CLASS NOTICE

Before me is the parties' joint motion (ECF No. 118) seeking preliminary approval of the class action settlement agreement, provisional certification of the class, appointment of class counsel, and approval of the class notice and notice plan. For the reasons stated below, the motion is **GRANTED**.

## BACKGROUND

This case concerns the State of Maine's administration of psychotropic medication to children in its foster care system. Second Am. Compl. for Injunctive

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Sara Gagné-Holmes is substituted for Jeanne M. Lambrew in her official capacity as the Acting Commissioner of the Maine Department of Health and Human Services, and Bobbi Johnson is substituted for Todd A. Landry in her official capacity as the Director of the Maine Office of Child and Family Services.

and Declaratory Relief and Req. for Class Action ("**Second Am. Compl.**") ¶ 1 (ECF No. 45). In March of 2019, attorneys with Children's Rights, a national non-profit organization advocating for children in state systems, began an investigation of Maine's practices in this area. Joint Mot. for Prelim. Approval of Class Action Settlement, Certification of Settlement Class, and Approval of Form and Manner of Class Notice ("**Joint Mot.**") 1 & n.1 (ECF No. 118); Joint Mot. Ex. 3 ("**Nardi Decl.**") ¶¶ 1, 4 (ECF No. 118-3). Among other things, the investigation included conducting extensive factual research on Maine's child welfare and mental health agencies and systems; identifying, investigating, and pursuing potential legal claims; researching relevant First Circuit law; and speaking with dozens of knowledgeable people throughout Maine, such as current and former youth in foster care. Nardi Decl. ¶ 4.

On January 6, 2021, Bryan C., Henry B., Trent W., Grayson M., Kendall P., and Neville H. (together, the "**Named Plaintiffs**"), through their adult Next Friends, filed a class action lawsuit against Jeanne M. Lambrew in her official capacity as Commissioner of the Maine Department of Health and Human Services ("**DHHS**") and Todd A. Landry in his official capacity as Director of the Maine Office of Child and Family Services ("**OCFS**"). Compl. for Injunctive and Declaratory Relief and Req. for Class Action (ECF No. 1). The Named Plaintiffs brought the complaint on behalf of a putative class of "all children who are or will be in DHHS foster care custody and who are or will be prescribed or administered one or more psychotropic medication[s] while in state care" (the "**Class**"). Second Am. Compl. ¶ 160. The Named Plaintiffs allege that three of the State's most pronounced and harmful oversight failures are:

2

(1) inadequate maintenance and timely dissemination of medical records; (2) inadequate informed consent procedures; and (3) an inadequate system to ensure that outlier prescriptions of psychotropic drugs to foster care children are flagged for secondary review. Second Am. Compl. ¶ 5. To address these failures, the Named Plaintiffs seek declaratory and injunctive relief for violations of the Class members' substantive and procedural due process rights under the Fourteenth Amendment, as well as violations of the Adoption Assistance and Child Welfare Act, 42 U.S.C. §§ 621 *et seq.*, 670 *et seq.*; Second Am. Compl. ¶¶ 280–98.

After I denied the Defendants' motion to dismiss on October 4, 2021, Order on Defs.' Mot. to Dismiss (ECF No. 43), the parties proceeded to discovery, Joint Mot. 2. The discovery process included taking depositions, gathering facts, working with experts, exchanging dozens of requests for production and interrogatories, and preparing, reviewing, and exchanging 37,000 pages of discovery material, including the Named Plaintiffs' case files. Nardi Decl. ¶ 6; Joint Mot. 2.

During the discovery process in early 2022, the parties started discussing settlement, and Magistrate Judge Nivison agreed to assist them in settlement discussions. Nardi Decl. ¶ 7; *see* Order Setting Settlement Conference (ECF No. 67).[2] In preparation for the first settlement conference, the parties exchanged terms sheets and prepared detailed statements for Judge Nivison. Nardi Decl. ¶ 7. The parties

---

[2]  The parties assert that they "jointly selected the Honorable Judge John C. Nivison as the mediator in February of 2022." Second Am. Compl. Ex. 1 ("**Agreement**") 3 (ECF No. 118-1). That statement is misleading. A number of judicial officers in the District of Maine volunteer to assist parties in resolving cases by holding judicial settlement conferences. *See* Local Rule 83.11(c). Parties do not have the right to "select" a specific judge.

engaged in negotiations through Judge Nivison on April 11, 2022, June 1, 2022, and July 7, 2022 (ECF Nos. 72, 80, 87). On July 13, 2022, the parties entered into a stay of discovery (ECF No. 88). The parties met for settlement discussions with Judge Nivison seven more times over the next year (ECF Nos. 94, 99, 103, 106, 108, 112, 114). In between meetings, the parties had many direct discussions and utilized subject-matter consultants with knowledge of psychotropic medication oversight and secondary review. Nardi Decl. ¶ 8. The Next Friends participated in sessions, reviewed drafts, and provided feedback. Nardi Decl. ¶ 8.

On March 1, 2024, the parties executed a settlement agreement that contemplates resolving the pending claims, with the Court retaining jurisdiction to enforce the terms of the agreement. Second Am. Compl. Ex. 1 ("**Agreement**") §§ IV.1.B, 4.B (ECF No. 118-1). Although both parties believe they could win the case, both sides recognize the risks, burdens, and uncertainties of litigation. Joint Mot. 4.

The Agreement purports to tackle the three main issues with the State's prescribing of psychotropic medication to children in foster care by:

1. Establishing procedures for the timely preparation and dissemination of a Portable Health Record for each child in DHHS custody. The Portable Health Record will move with the child from placement to placement and will be routinely updated with medical, mental, and behavioral health information. This information will be gathered through improved collection and appointment procedures and will be incorporated into the child's case plan. Agreement III.1.

4

2. Creating a process for informed consent by designated adults and children ages fourteen or older that covers all classes of psychotropic medication. This includes a grievance mechanism; education and training for staff and Resource Parents[3]; procedures for emergencies; and a detailed informed consent form. Agreement III.2.

3. Creating a psychiatric Clinical Review Team to perform both prospective reviews of certain recommendations for psychotropic medications for youth in foster care and retrospective reviews of files for children prescribed psychotropic medications that meet certain triggers. Agreement III.3.

To ensure that these changes are implemented, the Agreement sets Performance Criteria, establishes a timeline for implementation and enforcement, and provides for a third-party Implementation Reviewer to monitor the Defendants' progress. Agreement IV.2–3.

The parties also agreed to a communication to all class members about the proposed settlement. Joint Suppl. Br. to Joint Mot. Ex. 2 ("**Notice**") (ECF No. 119-2). This four-page Notice explains who it is addressed to, why it is important, what the class action is about, and the terms of the Agreement. Notice 2–3. In addition to providing the time and place of the fairness hearing, the Notice explains what will happen at that hearing, including that I will hear evidence and argument to decide if the settlement should be finally approved. Notice 2, 4. The Notice also explains to

---

[3] A "Resource Parent" is someone providing foster care to children in the State's custody. Agreement § I.14.

Class members how to submit comments or objections to the Agreement and how to request to speak at the fairness hearing. Notice 4. The Notice further provides a link to the Agreement, a number to call for a copy of the Agreement, and the email and mailing addresses for class counsel, who will be available to answer questions. Notice 4–5.

The Notice comes with an addendum setting out the plan for sending it to the Class. The Defendants will post a copy of the Notice on their websites and will transmit a copy to placement providers, parents, Guardians ad Litem for Class members, and Class members in independent or transitional living placements. Notice 7. The Defendants also will send copies to locations that Class members and their legal representatives would be likely to see them, such as congregate care placements, group homes, residential counseling centers, residential treatment centers, and child-placing agencies that the Defendants use. Notice 7.

The Named Plaintiffs are represented by Children's Rights and Bernstein, Shur, Sawyer & Nelson, P.A. ("**Bernstein Shur**"), a private law firm. Joint Mot. 16. After additional settlement discussions with Judge Nivison, the parties agreed on March 22, 2024 that the Defendants would reimburse Plaintiffs' Counsel $675,000 for their attorney's fees, costs, and expenses in this matter. Joint Suppl. Br. to Joint Mot. ("**Joint Suppl. Br.**") 1–2 (ECF No. 119); Joint Suppl. Br. Ex. 3 ("**Suppl. Nardi Decl.**") (ECF No. 119-3). The Notice explains this sum to the prospective Class. *See* Notice 3.

On March 1, 2024, the parties filed a joint motion seeking preliminary approval of the settlement, provisional certification of the Class, appointment of class counsel, and approval of the proposed Notice and notice plan. *See* Joint Mot. On April 4, 2024, the parties filed a joint brief regarding their attorney's fees, costs, and expenses. *See* Joint Suppl. Br.

## DISCUSSION

I deal first with the parties' request for preliminary approval of their proposed settlement, then proceed to class certification and appointment of class counsel, and finally address the issue of notice.

**I.    The Settlement Agreement**

**A.    Legal Standard**

Federal Rule of Civil Procedure 23(e) provides the procedural framework when the parties to a putative class action have reached a proposed settlement. *Anderson v. Team Prior, Inc.*, 2:19-cv-00452-NT, 2021 WL 3852720, at *4 (D. Me. Aug. 27, 2021); *Michaud v. Monroe Muffler Brake, Inc.*, No. 2:12-cv-00353-NT, 2015 WL 1206490, at *8 (D. Me. Mar. 17, 2015). Before notice can be sent to the putative class, the parties must demonstrate that the court "will likely be able to . . . approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B)(i). Rule 23(e)(2), which governs whether a settlement is finally approvable, requires a finding, after hearing, that the proposal is:

> fair, reasonable, and adequate, after considering whether:
> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;

7

>    (C) the relief provided for the class is adequate, taking into account:
>       (i) the costs, risks, and delay of trial and appeal;
>       (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>       (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>       (iv) any agreement required to be identified under Rule 23(e)(3); and
>    (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The preliminary approval contemplated by Rule 23(e)(1)(B)(i) may be given where it results from the parties' "serious, informed, and non-collusive negotiations"; "there are no grounds to doubt its fairness and no other obvious deficiencies" such as unduly preferential treatment of certain class members or excessive compensation for attorneys; and "the settlement appears to fall within the range of possible approval." *Anderson*, 2021 WL 3852720, at *5 (internal citations and quotation marks omitted). If the parties negotiated at arm's length and conducted sufficient discovery, the Court presumes the settlement is reasonable. *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32–33 (1st Cir. 2009); *Anderson*, 2021 WL 3852720, at *7.

### B.   Application

At this preliminary, pre-fairness hearing stage, I find that the parties have demonstrated that the Agreement likely "fall[s] within the range of possible final approval." *Michaud*, 2015 WL 1206490, at *9 (quoting *Trombley v. Bank of Am. Corp.*, No. 08–cv–456–JD, 2011 WL 3740488, at *4 (D.R.I. Aug. 24, 2011)).

8

First, as addressed more fully below, the class representatives and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A).

Second, over the course of sixteen months, the parties engaged in ten judicial settlement conferences with Judge Nivison while simultaneously engaging in discovery and seeking the input of outside experts and consultants. The Agreement is a product of these extensive arm's-length negotiations. Fed. R. Civ. P. 23(e)(2)(B).

Third, the relief provided for the class is likely adequate. Fed. R. Civ. P. 23(e)(2)(C). The Agreement addresses the three main problems alleged in the Complaint: inadequate maintenance and timely dissemination of medical records; the lack of a meaningful informed consent process; and the need for a secondary review system to screen outlier and high-risk prescriptions. The Agreement does so by creating new practices for collecting and disseminating medical information, obtaining informed consent from caretakers and older youth, and prospectively and retrospectively reviewing outlier prescriptions.

The parties acknowledge that there would be notable risks, costs, and delays for both sides if this case were to go to trial. Fed. R. Civ. P. 23(e)(2)(C)(i). As I noted in my Order on the Defendants' Motion to Dismiss, the standard for substantive due process claims in the foster care context is unsettled. *See* Order on Defs.' Mot. to Dismiss 26–27. If the parties were to forgo settlement, there would likely be additional delays and costs related to completing discovery, class certification, summary judgment, expert challenges, and, ultimately, trial. *See* Joint Mot. 8. The

9

Agreement avoids these risks by offering systemic reforms that will provide relief for all Class members within the timeframe in the Agreement.

The proposed method of providing relief seems effective. Fed. R. Civ. P. 23(e)(2)(C)(ii). The Agreement requires systemic changes, meaning all children in foster care who are prescribed psychotropic drugs will benefit from the new practices and policies. The Agreement thus appears to effectively provide relief while treating class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(C)(ii), (e)(2)(D).

Finally, the proposed award of $675,000 in attorney's fees, also negotiated at arm's length, appears reasonable at this preliminary stage.[4] Fed. R. Civ. P. 23(e)(2)(C)(iii). Counsel for the Named Plaintiffs investigated this matter for over a year before they even filed suit. Over the past two years, they were required to litigate the Defendants' motion to dismiss, engaged in extensive discovery, and participated in extended settlement talks. Joint Mot. 8. Further, the attorney's fees award appears reasonable in comparison to similar cases. *See M.B. v. Tidball*, No. 2:17-cv-4102-NKL, 2020 WL 1666159, at *2, 20 (W.D. Mo. Apr. 3, 2020), *aff'd sub nom. M.B. by Eggemeyer v. Tidball*, 18 F.4th 565 (8th Cir. 2021) (awarding $3,253,651.25 in fees and $132,907.56 in expenses where case settled two years after complaint was filed

---

[4] One method for awarding fees in class actions is the "lodestar" method, under which class counsel's fee is calculated based on the time spent on the matter, the attorneys' hourly rates, and any multipliers or discounts for special circumstances. *Michaud v. Monroe Muffler Brake, Inc.*, No. 2:12-cv-00353-NT, 2015 WL 1206490, at *8 (D. Me. Mar. 17, 2015). The parties represent that the negotiated amount is a significant reduction of the over $1 million class counsel could have sought under the lodestar analysis. Joint Suppl. Br. to Joint Mot. 5 (ECF No. 119); Joint Suppl. Br. to Joint Mot. Ex. 3, at 2 (ECF No. 119-3). Class counsel should be prepared to discuss the lodestar analysis with appropriate accompanying documentation prior to the final fairness hearing or the filing of any motion for attorney's fees.

in a similar class action involving the use of psychotropics in foster care); *M.B. v. Howard*, 555 F. Supp. 3d 1047, 1092 (D. Kan. 2021) (awarding $2,225,306.64 in fees and $72,305.15 in expenses where case settled 18 months after the complaint was filed in a foster care reform class action concerning mental health oversight).

The parties have met their burden of demonstrating that I will likely be able to approve the Agreement under the Rule 23(e)(2) factors.[5]

## II. Class Certification

Next, the parties seek provisional certification of the class. Joint Mot. 9.

### A. Legal Standard

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, parties requesting class certification must demonstrate that:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "If the conditions are satisfied, a court may certify a class action if the action is of a type identified in section (b) of the Rule." *Miller v. Carrington Mortg. Servs., LLC*, No. 2:19-cv-00016-JDL, 2020 WL 2898837, at *1 (D. Me. June 3, 2020). One of those types of actions is where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive

---

[5] One concern that I have with the Agreement is that it requires the Court to retain jurisdiction for as long as the Agreement is in effect. *See* Agreement IV.1.B.a (anticipating a five-year term subject to extension). The parties should be prepared at the hearing on final approval to address my concern with this Court retaining jurisdiction for an unlimited amount of time.

11

relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

### B. Application

#### 1. Numerosity

The class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). " 'Impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Michaud*, 2015 WL 1206490, at *2 (quoting *Advert. Specialty Nat'l Ass'n v. Fed. Trade Comm'n*, 238 F.2d 108, 119 (1st Cir. 1956)). "[C]ourts in this circuit have generally found that a class of 40 or more individuals satisfies numerosity." *Venegas v. Global Aircraft Servs.*, 159 F. Supp. 3d 93, 98 (D. Me. 2016).

Here, as of December of 2023, DHHS had legal custody of approximately 2,500 children, about 500 of whom had been prescribed one or more psychotropic medication. When future foster children are factored in, the number of Class members is even higher. Joint Mot. 12. The numerosity requirement has been met.

#### 2. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Class members' claims must be capable of "generat[ing] common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotation marks and citation omitted). "Those common answers typically come in the form of 'a particular and sufficiently well-defined set of allegedly illegal policies or practices' that work similar harm on the class plaintiffs." *Parent/Pro. Advoc. League v. City of Springfield*, 934

12

F.3d 13, 28 (1st Cir. 2019) (quoting *Parsons v. Ryan*, 754 F.3d 657, 679 (9th Cir. 2014)).

In this case, the Named Plaintiffs challenged the Defendants' system-wide policies and practices concerning the monitoring and oversight of the administration of psychotropic medications to Class members. Considering that each member of the Class is, has been, or will be in foster care in Maine, they are equally subject to the policies applicable to the foster care system. Joint Mot. 12. The Class members also share the legal questions of whether DHHS's policies and practices violate their constitutional and statutory rights, which can be answered on a class-wide basis. *See M.B. v. Corsi*, 327 F.R.D. 271, 278–80 (W.D. Mo. 2018) (certifying class in a similar case about reforming the use of psychotropics in Missouri's foster care system). The commonality requirement has been met.

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality is satisfied when the named plaintiff[s'] 'injuries arise from the same events or course of conduct as do the injuries of the class and when the plaintiff[s'] claims and those of the class are based on the same legal theory." *Anderson v. Team Prior, Inc.*, No. 2:19-cv-00452-NT, 2022 WL 1156056, at *3 (D. Me. Apr. 19, 2022) (quoting *Glynn v. Me. Oxy-Acetylene Supply Co.*, No. 2:19-cv-00176-NT, 2020 WL 6528072, at *2 (D. Me. Nov. 5, 2020)).

Here, like the rest of the Class, the Named Plaintiffs are youth in Maine's foster care system prescribed psychotropic medications. Second Am. Compl. ¶¶ 11–

151, 160. The Named Plaintiffs' injuries arise from the Defendants' policies and procedures regarding the administration of psychotropics to youth in foster care, so the Named Plaintiffs' and the wider Class's claims are based on the same legal theories, and the Named Plaintiffs are typical of the Class.

### 4. Adequacy

The fourth requirement is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Supreme Court has explained that this requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent," and "factors in competency and conflicts of class counsel." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625, 626 n.20 (1997). "Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement." *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 138 (1st Cir. 2012) (internal quotation marks and citations omitted).

The Named Plaintiffs' interest in addressing current deficiencies in Maine's psychotropic medication program for foster care youth aligns neatly with the interest of the Class at large. There is also no evidence of class counsel's lack of competency or conflicts of interest, "such as differences in the type of relief sought, a theory of law or fact that benefits some class members, but harms others, or a scenario where some class members benefit from the defendant's conduct." *Michaud*, 2015 WL 1206490, at *4; *see also M.B. v. Corsi*, 327 F.R.D. at 282. The adequacy requirement has been satisfied.

### 5. Rule 23(b) Requirement

As discussed above, a class must also satisfy one of the requirements of Rule 23(b). The parties represent that the Class here satisfies Rule 23(b)(2). The subsection provides that certification is appropriate if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Classes certified under Rule 23(b)(2) are often "the vehicle for civil rights actions and other institutional reform cases," such as cases alleging deficiencies in government-administered programs. *Hawkins ex rel. Hawkins v. Comm'r of N.H. Dep't of Health & Human Servs.*, No. Civ. 99-143-JD, 2004 WL 166722, at *4 (D.N.H. Jan. 23, 2004) (internal quotations and citation omitted); *see M.B. v. Corsi*, 327 F.R.D. at 282.

The Named Plaintiffs allege that the Defendants acted or refused to act on grounds that apply to the Class generally by implementing policies and practices regarding the prescribing of psychotropic medications to Class members. The Named Plaintiffs seek declaratory and injunctive relief rather than monetary damages, as contemplated by Rule 23(b)(2). Rule 23(b)(2) is satisfied. *See M.B. v. Corsi*, 327 F.R.D. at 282; *Hawkins*, 2004 WL 166722, at *4 (granting the parties' joint motion and certifying Rule 23(b)(2) class consisting of children who alleged that the New Hampshire Department of Health and Human Services failed to provide dental services).

### III. Class Counsel

#### A. Legal Standard

"Pursuant to Federal Rule of Civil Procedure 23(g), the Court must appoint counsel who will 'fairly and adequately represent the interest of the class.'" *Conant v. FMC Corp.*, 2:19-cv-00296-JDL, 2020 WL 1482634, at *3 (D. Me. Mar. 27, 2020) (quoting Fed. R. Civ. P. 23(g)(4)), *R. & R. adopted* 2020 WL 2145318. The Rule requires me to consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

#### B. Application

As this case's history and the declarations of Attorneys Nardi and Woodcock show, proposed counsel meet Rule 23(g)'s standards. Proposed counsel investigated and researched this case for over a year prior to filing the initial complaint. Nardi Decl. ¶ 4. They have extensive class action experience both in this Court and nationally, and they have represented youth in the child welfare system in similar cases. Nardi Decl. ¶¶ 2–3, 5, 11–12; Woodcock Decl. ¶¶ 2, 7. Proposed counsel have also demonstrated knowledge of the applicable law during the litigation of the Defendants' motion to dismiss. Finally, Children's Rights and Bernstein Shur represent that they have dedicated considerable resources to the case and will continue to do so. In addition, in this and other cases, counsel have consistently

16

demonstrated that they are highly skilled and knowledgeable practitioners. Nardi Decl. ¶ 10; Woodcock Decl. ¶¶ 6–7. Because the record reflects that counsel have and will continue to fairly and adequately represent the class, I find it appropriate to appoint Children's Rights and Bernstein Shur as class counsel in this case.

## IV. Notice

For a class certified under Rule 23(b)(2), I may "direct appropriate notice to the class" "in a reasonable manner." Fed. R. Civ. P. 23(c)(2)(a), (e)(1)(B). I must find that the notice "is reasonably calculated to reach the class members and inform them of the existence of and the opportunity to object to the settlement." *Nilsen v. York Cnty.*, 382 F. Supp. 2d 206, 210 (D. Me. 2005).

I have reviewed the Notice and find that it is clear, concise, and states in plain language the certified class definition, what the class action is about, what the Agreement does, and how to be heard on the matter and contact class counsel. The parties plan to disseminate the Notice online, send copies directly to Class members and their guardians, and post copies in locations that Class members and their legal representatives would be likely to see them. The Notice also explains the agreed-upon attorney's fees. Other courts have approved similar notice plans in foster care class actions. *See M.B. v. Tidball*, No. 2:17-cv-04102, ECF Nos. 280, 282, at 4–6 (W.D. Mo. July 15, 2019); *M.B. v. Howard*, No. 2:18-cv-02617, ECF No. 140, at 5–8 (D. Kan. Sept. 9, 2020). Accordingly, the Notice satisfies Rule 23 and due process requirements. *See id.*; *Michaud*, 2015 WL 1206490, at *10; *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 270 F.R.D. 30, 35–36 (D. Me. 2010).

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the parties' joint motion (ECF No. 118). The Agreement is preliminarily approved, the settlement class is provisionally certified for settlement purposes only, the proposed class notice of settlement attached to this order is approved, and Children's Rights and Bernstein Shur are appointed as class counsel. The Clerk is directed to schedule a final approval hearing.

SO ORDERED.

/s/ Nancy Torresen<br>
United States District Judge

Dated this 3rd day of July, 2024.