# UNITED STATES DISTRICT COURT FOR THE

# DISTRICT OF MAINE

| | |
|---|---|
| **Bryan C.** and **Henry B.** through their next friend ) | |
| **Michael P. Dixon**, *et al.*, ) | |
| ) | |
| **Plaintiffs**, ) | C/A No. 1:21-cv-00005-NT |
| v. ) | |
| **Sara Gagné-Holmes** in her official capacity as Acting ) | |
| Commissioner of the Maine Department of Health and ) | |
| Human Services, *et al.*, ) | |
| ) | |
| **Defendants**. ) | |
| ) | |

# JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# AND MEMORANDUM OF LAW IN SUPPORT

The Parties jointly seek final approval of their agreement to settle Plaintiffs' claims on behalf of a Class of children in the Defendants' foster care custody prescribed psychotropic medications. The Settlement Agreement meets the standard for final approval of a class action settlement because it is fair, reasonable, and adequate, and the Parties have provided reasonable notice of the Settlement to Class members. Accordingly, the Parties respectfully request that after the November 4, 2024 final fairness hearing, the Court issue an order: (a) granting final approval of the class action Settlement Agreement, including its provisions establishing a defined Settlement Class and providing for reimbursement by Defendants of Plaintiffs' reasonable attorney's fees and costs in the negotiated amount and (b) retaining court jurisdiction over the action during the time set forth by the Settlement Agreement.

## FACTS

### I. OVERVIEW OF THE LITIGATION AND SETTLEMENT

Plaintiffs, by their Next Friends and through counsel, commenced this class action lawsuit in January 2021 alleging Constitutional and statutory violations surrounding the Defendants' administration and oversight of psychotropic medication to children in Maine foster care custody. Plaintiffs sought to implement systemic practices and policies to ensure: (1) maintenance and timely dissemination of up-to-date medical records; (2) a meaningful informed consent procedure for psychotropic medications; and (3) a secondary review system to guard against outlier and high-risk prescription practices before and after psychotropic medication is prescribed. Second Am. Compl. (the "Complaint"), ECF No. 45 ¶ 298. Defendants disputed the allegations and moved to dismiss the Complaint in full. Mot. to Dismiss, ECF No. 25. In October 2021, the Court denied the motion, allowing the litigation to proceed. Order on Mot. to Dismiss, ECF No. 43. The Parties then engaged in months of voluminous discovery, allowing the Parties to better understand the scope of the issues to inform settlement and ultimately craft the settlement reforms. *See* Decl. of M. Nardi in Supp. of

Joint Mot. for Prelim. Approval ("Initial Nardi Decl."), ECF No. 118-3 ¶ 6 (detailing the discovery); *see also* Joint Mot. for Prelim. Approval, ECF No. 118 at 3; Order Granting Joint Mot. for Prelim. Approval ("Order"), ECF No. 120 at 3.

In early 2022, while continuing with active discovery, the Parties initiated settlement negotiations, requested the appointment of a mediator, and, in April 2022, began mediation with the Honorable Judge Nivison.[1] *See* Order Setting Settlement Conference, ECF No. 67. Over the course of ten joint sessions with Judge Nivison, countless discussions between the Parties, and collaboration with subject matter consultants, the Parties carefully negotiated reforms to address, in a detailed and specific manner, all core issues in the Complaint. *See* Settlement Agreement (or the "Agreement"), ECF No. 118-1. The Settlement Agreement resolves all claims and enumerates planned reforms. It also includes a process to assess if the reforms are implemented in practice – employing 14 objective "exit" criteria and an Implementation Reviewer to monitor implementation and assess if those criteria are met. Settlement Agreement §§ IV.1.B, IV.2; Settlement Agreement Ex. C. The Agreement also includes a mechanism to ensure implementation through the Court's continuing jurisdiction for that limited purpose. Settlement Agreement §§ IV.1.B, IV.2. The Parties jointly expect full implementation within five years, during which time this Court would retain jurisdiction, subject to the Court's approval. This period can be shortened or extended only upon approval by the Court based on a showing that Defendants have met or failed to meet specific obligations. Settlement Agreement § IV.1.B.a.ii; *see infra* Section III(C).

The Parties also engaged in extensive negotiations and mediation to agree upon a total payment of $675,000 by Defendants to resolve Plaintiffs' statutory claim for attorney's fees and

---

[1] In its order granting preliminary approval of the class action settlement, this Court noted that it is not up to the Parties to select a specific judicial settlement officer and thus the Parties' characterization of their "selection" of Judge Nivison was potentially misleading. Order at 3 n.2. The Parties did not mean to imply that they "selected" one judicial officer over another, but instead, when faced with the choice of using a private mediator or a judicial settlement conference, they jointly proposed a judicial settlement conference.

2

expenses. *See* Joint Agreement on Mediated Fees, ECF No. 119-1; M. Nardi Suppl. Decl. in Supp. of Joint Mot. for Prelim. Approval ("Suppl. Nardi Decl."), ECF No. 119-3 ¶ 3; *see also* 42 U.S.C. § 1988(b). Before doing so, Plaintiffs shared, and Defendants reviewed, among other things: 143 pages of Plaintiffs' Counsel's itemized billing entries, summaries of those billing entries categorized by the stage of the litigation in which they were made, proposed hourly rates for each biller (applying local market rates in Maine), hourly rates received recently by attorneys in other similar cases, and specific billing judgment exclusions of time entries made by Plaintiffs' Counsel. M. Nardi Decl. in Supp. of Joint Mot. for Final Approval of Class Action Settlement, filed herewith ("Nardi Final Approval Decl.") ¶¶ 10-11.

On July 3, 2024, the Court granted preliminary approval of the Settlement Agreement, provisionally certified the Class for settlement purposes, appointed Children's Rights and Bernstein Shur as Class Counsel, approved the proposed notice plan, and directed the issuance of notice to the Class. Order at 11. In preliminarily approving the Settlement Agreement, the Court found it likely that it would be able to grant final approval of the Agreement under each of the Federal Rule of Civil Procedure 23(e)(2) factors. Order at 8, 11. The Court found that the Agreement was the product of extensive arm's-length negotiations and provided effective and adequate relief by addressing the three main deficiencies alleged in the Complaint: "inadequate maintenance and timely dissemination of medical records; the lack of a meaningful informed consent process; and the need for a secondary review system to screen outlier and high-risk prescriptions." Order at 9. The Court further found that the Settlement Agreement appropriately mitigated against the costs, risks, and delays of protracted litigation and that the proposed fee award negotiated at arm's length appeared reasonable. Order at 10.

As discussed more fully below in Section III.B, the Parties have now fully complied with each aspect of the notice plan approved by the Court. Aff. of B. Gutierrez in her Capacity as

3

Communication and Compliance Manager, filed herewith ("Gutierrez Final Approval Aff.") ¶ 4; Nardi Final Approval Decl. ¶¶ 3-7 (describing compliance with the notice requirements). The Parties will next submit a supplement to this brief by October 9, 2024 addressing all comments by Class members regarding the Settlement Agreement that are submitted by September 25, 2024 in the manner set forth by the notice plan. *See* Joint Mot. for Prelim. Approval, ECF No. 118 at 20. After the fairness hearing scheduled on November 4, 2024 (Order Scheduling Final Fairness Hearing, ECF No. 122), the Court should grant final approval of the Settlement Agreement.

## ARGUMENT

### II.   CERTIFICATION OF THE SETTLEMENT CLASS SHOULD BE CONFIRMED

The Court provisionally certified, for settlement purposes, a Plaintiff Class of all children who are or will be in Defendants' foster care custody and who are or will be prescribed one or more psychotropic medications while in state care (the "Settlement Class" or the "Class") based on a finding that the Class meets the requirements of Federal Rule of Civil Procedure 23. Order at 11-15.

Specifically, the Court found that given the hundreds of children in DHHS custody who were prescribed psychotropic medication, and considering future children in foster care who may be prescribed such medication, the numerosity requirement has been met. Order at 12. Moreover, the Court found that the commonality requirement has been met, noting that the Named Plaintiffs challenge the Defendants' system-wide policies and practices concerning monitoring and oversight over the administration of psychotropic medication: policies and practices to which each member of the Class is equally subject. Order at 13. The Court also found that the typicality requirement has been met because the Named Plaintiffs' and the wider Class's claims are based on the same legal theories alleging harm arising from these same system-wide policies and procedures. Order at 13-14. The Court held that the Named Plaintiffs' interest in addressing the alleged deficiencies in Defendants' psychotropic medication monitoring policies align with the Class at large, and that there

4

is no evidence of Class Counsel's lack of competency or conflicts of interest, thus meeting the adequacy requirement. Order at 14.

The Court also held that certification is proper under Rule 23(b)(2) because the Named Plaintiffs "allege that Defendants acted or refused to act on grounds that apply to the Class generally by implementing policies and practices regarding the prescribing of psychotropic medications," and "seek declaratory and injunctive relief rather than monetary damages." Order at 15. Finally, noting Plaintiffs' counsel's extensive work on this case, class action experience, knowledge of the applicable law, and dedication of considerable resources to the case, the Court appointed Children's Rights and Bernstein Shur as Class Counsel. Order at 16-17.

The Parties hereby incorporate their prior arguments for certification of the Class and appointment of Class Counsel. *See* Joint Mot. for Prelim. Approval, ECF No. 118 at 9-17. Nothing has changed since the Parties made those arguments or the Court's Order that would alter the propriety of certification of the Class. Accordingly, the Court should affirm and grant final certification of the Class for settlement purposes, and appointment of Class Counsel. *See Rapuano v. Trustees of Dartmouth Coll.*, No. 1:18-cv-01070-LM, 2020 WL 3965784, at *1 (D.N.H. July 10, 2020) (affirming findings in its Preliminary Approval Order that the prerequisites for a class action were satisfied for settlement purposes); *Hill v. State St. Corp.*, No. CIV.A.09-12146-GAO, 2015 WL 127728, at *13 (D. Mass. Jan. 8, 2015) (approving and adopting magistrate's recommendation to affirm preliminary approval order certifying class for settlement purposes).

### III. THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT AGREEMENT

The Court should grant final approval of the Settlement Agreement after the fairness hearing because: (i) the Settlement Agreement is fair, reasonable, and adequate in accordance with Federal Rule of Civil Procedure 23(e); and (ii) because the Parties have provided reasonable notice to the Class.

As discussed in the Parties' Joint Motion for Preliminary Approval, there is a multi-part process for evaluating class action settlements. *See* Joint Mot. for Prelim. Approval, ECF No. 118 at 5-6. At the preliminary approval stage, counsel submits the terms of the proposed settlement to the court, and the court makes an initial evaluation of whether the settlement "appears to fall within the range of possible final approval," such that the court should direct notice to the Class in a reasonable manner. *Michaud v. Monro Muffler Brake, Inc.*, No. 2:12-cv-00353-NT, 2015 WL 1206490, at *8 (D. Me. Mar. 17, 2015) (cleaned up) (Torresen, J.); Fed. R. Civ. P. 23(e)(1)(b). Final approval is merited when, after notice is implemented and after a fairness hearing, the court determines that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, courts consider the following Rule 23(e)(2) factors:

   (A) The class representatives and class counsel have adequately represented the class;

   (B) The proposal was negotiated at arm's length;

   (C) The relief provided for the class is adequate, taking into account:

   i.  the costs, risks, and delay of trial and appeal;

   ii. the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

   iii. the terms of any proposed award of attorney's fees, including timing of payment;

   iv. any agreement required to be identified under Rule 23(e)(3); and

   (D) The proposal treats class members equitably relative to each other.

Fed. R. Civ P. 23(e)(2); *see Purinton v. Moody's Co-Worker Owned, Inc.*, No. 2:20-cv-00296-JAW, 2023 WL 167560, at *2 (D. Me. Jan. 12, 2023).

Often, the Rule 23(e) factors on fairness, reasonability, and adequacy listed above are analyzed for the first time in assessing final approval. *See Michaud*, No. 2:12-cv-00353-NT at *8 (reserving determination as to proposed settlement's fairness, reasonableness, and adequacy until

after the fairness hearing); *Purinton*, No. 2:20-cv-00296-JAW at *2 (granting final approval of a settlement agreement that met the cited factors). Here, however, the Parties explained why these factors were met in the preliminary approval briefing. The Court found that each factor favored granting preliminary approval of the Settlement Agreement. Order at 10-11.[2] As discussed further in Section III(A)(1), each factor supports final approval, and no new circumstances have altered the assessment of any factor. The Parties have also since effectuated notice in the manner set forth by the notice plan, Gutierrez Final Approval Aff. ¶ 4, which the Court deemed reasonable at preliminary approval, such that Class members have the opportunity to respond with formal comments and testimony at the November 4, 2024 fairness hearing.[3]

In considering the fairness, reasonableness, and adequacy of the settlement, in conjunction with Rule 23(e), courts in the First Circuit have also found the following factors relevant in determining the reasonableness, adequacy, and fairness at final approval: "(1) comparison of the proposed settlement with the likely result of litigation; (2) stage of the litigation and the amount of discovery completed; (3) reaction of the class to the settlement; (4) quality of counsel; (5) conduct of the negotiations; [and] (6) prospects of the case, including risk, complexity, expense and duration." *Michaud*, 2:12-cv-00353-NT at *8 (citation removed) (hereinafter the "First Circuit factors"). Many of these factors intersect with the 23(b)(2) considerations (for instance, the stage of the litigation and conduct of the negotiations), such that many were already considered in the Court's preliminary approval analysis. *See, e.g.*, Order at 9 (discussing extensive arm's length negotiations and prospect of forgoing settlement and proceeding with the case); *id.* at 16-17 (discussing Plaintiffs' Counsel's extensive work on the case, dedication of resources, and skill and knowledge). As explained further

---

[2] In making this determination, the Court noted that additional detail would be beneficial on the higher amount of fees that could be sought in a contested fee application and the time frame of the Court's jurisdiction, so this brief and the supporting papers further address these points and provide additional information. *See infra* Sections III(A)(1)(i), (C); Nardi Final Approval Decl. ¶¶ 8-26 & accompanying Appendix.

[3] *See* Order at 17; Notice of Proposed Class Action Settlement ("Notice"), ECF No. 120-1; Order Scheduling Final Fairness Hearing, ECF No. 122; *see also infra* at 15-16 (noting forthcoming process for compiling all comments).

7

in Section III(A)(2), the relevant First Circuit factors also support final approval of the proposed Settlement.

Importantly, in considering all the enumerated factors, "[a] district court has considerable discretion in approving a class action settlement, given the generality of the standard and the need to balance a settlement's benefits and costs." *Purinton*, No. 2:20-cv-00296-JAW at *2 (cleaned up). An analysis of the settlement proposal "involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *Michaud*, No. 2:12-cv-00353-NT at *8 (citation removed).

### A. The Settlement is Fair, Reasonable, and Adequate

#### 1. The Fed. R. Civ P. 23(e)(2) Factors Support Final Approval of the Settlement

Each factor listed in Rule 23(e)(2) supports a finding that the Settlement is fair, reasonable, and adequate. *See supra* at 6. Under the first factor, the Class representatives and Plaintiffs' Counsel have adequately represented the Class and will continue to do so. *See* Fed. R. Civ. P. 23(e)(2)(A). Noting Plaintiffs' Counsel's thorough investigation and research of the case, extensive experience in class actions, knowledge of applicable law, and commitment to devoting the necessary resources to the case, the Court held that Plaintiffs' Counsel "have and will continue to fairly and adequately represent the class." Order at 17; *see also* Joint Mot. for Prelim. Approval, ECF No. 118 at 8; Initial Nardi Decl. ¶¶ 4-7 (describing Plaintiffs' Counsel's extensive work in litigating the motion to dismiss, conducting and responding to discovery, and negotiating the Settlement). The Court also found the Named Plaintiffs fairly and adequately represent the Class because their "interest in addressing current deficiencies in Maine's psychotropic medication program for foster care youth aligns neatly with the interest of the Class at large." Order at 14.

8

Second, the Settlement Agreement "is a product of [] extensive arm's-length negotiations." Order at 9; *see also* Fed. R. Civ. P. 23(e)(2)(B). As the Court observed, "over the course of sixteen months, the parties engaged in ten judicial settlement conferences with Judge Nivison while simultaneously engaging in discovery and seeking the input of outside experts and consultants." Order at 9. By mediating with a judicial officer and carefully negotiating the substance and structure of the Agreement over many months and numerous judicial settlement conferences, the Parties ensured that the negotiations were non-collusive and conducted at arm's length. *See Purinton*, No. 2:20-cv-00296-JAW at *2 (finding a proposed settlement negotiated at arm's length when Judge Nivison assisted negotiations over a period of five months).[4]

Third, the relief provided to the Class is adequate considering the relevant factors in Fed. R. Civ. P. 23(e)(2)(C)(i-iv): the costs, risk, and delay of trial and appeal, the effectiveness of the relief to the Class, the proposed award of attorney's fees, and the terms of the Settlement Agreement. The Court found that the Agreement addresses the three main deficiencies alleged in the Complaint—inadequate maintenance and timely dissemination of medical records; lack of a meaningful informed consent process; and the need for a secondary review system to screen outlier and high-risk prescriptions—by creating new practices for collecting and disseminating medical information, obtaining informed consent from caretakers and older youth, and prospectively and retrospectively reviewing certain prescriptions. Order at 9; *see also* Settlement Agreement § III.1-3. Settling now avoids the costs, risks, and delays associated with litigation—completing discovery, class certification, summary judgment, expert challenges, and, ultimately, trial—by instead "offering systemic reforms that will provide relief for all Class members within the time frame in the Agreement." Order at 9-10. The proposed method of providing relief is effective because the

---

[4] The Parties further ensured this by sequencing discussion of fees until after the merits were fully negotiated. *See* Joint Suppl. Br. to Mot. for Prelim. Approval of Settlement, ECF No. 119 at 5.

Agreement requires systemic changes, meaning all children in foster care who are prescribed psychotropic drugs will benefit from the relief obtained through Settlement: new system-wide practices and policies that will improve oversight of psychotropic medications. Order at 10. As the Court found, "[t]he Agreement thus appears to effectively provide relief while treating class members equitably relative to each other." Order at 10, citing Fed. R. Civ. P. 23(e)(2)(C)(ii), (e)(2)(D).

### i) The Agreed-Upon Attorney's Fees are Reasonable

In determining whether relief to the Class is adequate, the Court should consider the terms of any proposed award of attorney's fees. Here, the agreed-upon attorney's fees of $675,000 are fair and reasonable given the extensive work put into litigating this case, the expertise of Plaintiffs' Counsel, and the excellent result achieved. Joint Suppl. Br. to Mot. for Prelim. Approval of Settlement, ECF No. 119 at 3-4.

Parties are permitted to agree on the amount of attorney's fees as part of a negotiated settlement. *See Bradford v. Naples Causeway Dev.*, LLC, No. 2:21-cv-00015-NT, 2022 WL 3154760, at *1 (D. Me. Aug. 8, 2022) (approving settlement that included a specific amount of attorney's fees and expenses, where the negotiated fees were below market rate, and given the extensive amount of legal work expended).

The negotiated amount of attorney's fees is fair and reasonable based on the work performed by Plaintiffs in investigating, commencing, and litigating this lawsuit; Plaintiffs' Counsel's expertise; and the beneficial outcome achieved in the Settlement Agreement. ECF No. 119 at 3-4 (describing this in detail); Order at 10 (noting the length of investigation, litigation, extensive discovery, and participation in extended settlement talks).[5] The fee was the result of extensive

---

[5] In the Declaration of Marissa C. Nardi accompanying this Motion, Plaintiffs provide the Court with further documentation supporting that the negotiated amount represents a significant reduction of what the Plaintiffs could have sought under a lodestar analysis in a contested fee application. Nardi Final Approval Decl. ¶¶ 13, 18.

10

negotiation between the Parties, facilitated by Judge Nivison. It was also based on ample information sharing between the Parties, including Plaintiffs' sharing of 143 pages of billing entries which would have been foundational to any fee application if Parties did not agree to fees, along with detailed summaries of the work and hours billed for each phase of the case, proposed Maine hourly rates for each person who billed time on the case, rates received by Plaintiffs' Counsel from similar class action litigation regarding mental health treatment for Classes of children, and discretionary billing judgment rules applied to reduce the total amount sought. *See supra* at 3; Nardi Final Approval Decl. ¶¶ 10-11.[6]

The fee amount, reasonably, also represents a significant reduction from the over $1 million amount that Plaintiffs' Counsel could reasonably have sought in a contested fee application. This holds true under a lodestar analysis applying either Plaintiffs' proposed rates or Defendants' lower proposed rates, as described in greater detail and with supporting documentation in the declaration submitted herewith. *See* Nardi Final Approval Decl. ¶¶ 13, 16-17 and Appendix (including, *inter alia*, information on the amount of time billed, the time billed in each phase of litigation, discretionary write-offs applied, and the rates applied for each biller under the different Parties' proposed rates).[7] The lodestar was calculated through the commonly accepted method of multiplying the reasonable time spent on the matter by each attorney's respective hourly rate. *See Michaud*, No. 2:12-cv-00353-NT at *9 n.11; *Coastal Counties Workforce, Inc. v. LePage*, No. 1:17-cv-00417-JAW, 2018 WL 6438743,

---

[6] As the Court referenced, $675,000 also appears reasonable in comparison to similar cases. Order at 10 (*citing M.B. v. Tidball*, No. 2:17-cv-4102-NKL, 2020 WL 1666159, at *2, 20 (W.D. Mo. Apr. 3 2020), *aff'd sub nom. M.B. by Eggemeyer v. Tidball*, 18 F.4th 565 (8th Cir. 2021) (awarding $3,253,651.25 in fees and $132,907.56 in expenses where case was settled two years after complaint was filed in a similar class action involving the use of psychotropics in foster care); *M.B. v. Howard*, 555 F. Supp. 3d 1047, 1092 (D. Kan. 2021) (awarding $2,225,306.64 in fees and $72,305.15 in expenses where case settled 18 months after the complaint was filed in foster care reform class action concerning mental health oversight)).

[7] Plaintiffs proposed rates based on prevailing market rates in Portland, Maine for federal court attorneys experienced in litigating complex litigation and class actions in federal court, and Defendants proposed lower, inflation-adjusted rates from *Coastal Counties Workforce, Inc. v. LePage. See id.*, No. 1:17-cv-00417-JAW, 2018 WL 6438743, at *3; Nardi Final Approval Decl. ¶ 17. The lodestar is over a million dollars under either Party's set of proposed rates. *Id.*

11

at *3 (D. Me. Dec. 7, 2018) ("Ordinarily, the trial court's starting point in fee-shifting cases is to calculate a lodestar; that is, to determine the base amount of the fee to which the prevailing party is entitled by multiplying the number of hours productively expended by counsel times a reasonable hourly rate"). Plaintiffs calculated their lodestar after applying discretionary billing judgment exclusions of time entries including: (1) capping the number of attorneys attending case-related meetings who may be included in the lodestar; (2) charging for a minimal number of the several months actually spent in pre-filing case investigation; and (3) foregoing any multiplier or other factor that would increase the fees sought in any way. The hourly rates included in the lodestar calculation are all keyed to rates in the District of Maine, with Plaintiffs proposing rates based on prevailing market rates in Portland, Maine for attorneys with experience litigating complex litigation and class actions in federal court, and Defendants proposing lower inflation-adjusted rates from the *Coastal Counties* litigation. *See id.* at *3; Nardi Final Approval Decl. ¶¶ 13, 16-17.

### 2. The First Circuit Factors Support Final Approval of the Proposed Settlement

The First Circuit factors also collectively weigh strongly in favor of final approval here. *See supra* at 7-8; *Scovil v. FedEx Ground Package Sys., Inc.*, No. 1:10-cv-515-DBH, 2014 WL 1057079, at *2 (D. Me. Mar. 14, 2014) (listing and applying the First Circuit factors in concluding that the proposed settlement was fair, reasonable, and adequate).

First, in comparing the proposed settlement with the likely result of litigation, final approval is warranted because the Settlement Agreement delivers solutions to the three main deficiencies alleged in the Complaint, implementation of which will commence sooner than would have occurred following a trial with an unknown outcome. *See* Order at 9; *see also* ECF No. 118 at 8-9; *Venegas v. Glob. Aircraft Serv., Inc.*, No. 2:14-cv-249-NT, 2017 WL 2730025, at *2 (D. Me. June 26, 2017) (Torresen, J.) (finding settlement reasonable based on uncertainty of success on the merits at trial, among other things).

The second factor, the stage of litigation and discovery, also supports approval of the Settlement. Litigation here was sufficiently advanced, and extensive information was exchanged between the Parties in formal discovery to inform the Settlement Agreement. *See* Order at 3 (discussing motion to dismiss and discovery exchanged). Moreover, Plaintiffs conducted an almost two-year investigation prior to filing the Complaint. *See* Initial Nardi Decl. ¶¶ 4-5 (describing the fact-gathering during the investigation). Once the litigation commenced, the Parties fully briefed their substantive positions at the motion to dismiss phase and then conducted thorough formal discovery, including depositions as well as the production and review of tens of thousands of documents. *See id.* ¶ 6; *see also Venegas*, No. 2:14-cv-249-NT at *2 (in light of the litigation and discovery that "preceded negotiations, the settlement here was achieved with a clear view as to the strengths and weaknesses of the case").

Third, as to the reaction of the Class, the Class can still submit written comments until September 26, 2024 under the Notice. The Parties will submit a supplement to this brief compiling and addressing all Class member comments by October 9, 2024. *See* Joint Mot. for Prelim. Approval, ECF No. 118 at 20; *see also* Gutierrez Final Approval Aff. ¶ 4(c), (d)(iii)-(vi) (notice fully issued to the Class and adult representatives who can inform the Class member children by August 14, 2024). The Parties have received no formal comments to date.  The Settlement provides all Class members with expanded protections and rights, such as the right to an age-appropriate informed assent and consent conversation, and the opportunity to be heard prior to receiving a psychotropic medication.

Fourth, the quality of counsel also weighs in favor of final approval. As the Court found, counsel "have extensive class action experience both in this Court and nationally," "represent that they have dedicated considerable resources to the case and will continue to do so," and "have consistently demonstrated that they are highly skilled and knowledgeable practitioners." Order at 16-17; *see also* Joint Mot. for Prelim. Approval, ECF No. 118 at 16-17.

Fifth, as described above, the negotiations were conducted at arm's length, and the Parties participated in 10 judicial settlement conferences with Judge Nivison's active involvement. Finally, in considering the prospects of the case, including the risk, complexity, expense and duration, both sides agreed that proceeding to trial on Plaintiffs' systemic claims would be expensive, complex, and unpredictable. This factor weighs in favor of final approval. *See Venegas*, No. 2:14-cv-249-NT at *2 ("The parties' arm's-length settlement negotiations also support a determination that the settlement was fair and that it was not a product of collusion or fraud among the parties").

### B. Notice to the Class Was Reasonable

The Federal Rules provide that "the court must direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement agreement]." Fed. R. Civ. P. 23(e)(1)(B). "Notice meets Rule 23(e) and due process requirements if it is reasonably calculated to reach the class members and inform them of the existence of and the opportunity to object to the settlement." *Nilsen v. York Cnty.*, 382 F. Supp. 2d 206, 210 (D. Me. 2005); *Michaud*, No. 2:12-cv-00353-NT at *10.

In its July 3rd Order, the Court wrote that the proposed Notice was "clear, concise, and states in plain language the certified class definition, what the class action is about, what the Agreement does, and how to be heard on the matter and contact class counsel." Order at 17. The Notice also identified the time and place of the fairness hearing and provided mailing and email addresses for Plaintiffs' Counsel to which the public can submit comments in support of or in objection to the Settlement Agreement. Notice of Proposed Class Action Settlement ("Notice"), ECF No. 120-1.

The Court also approved the Notice Plan (ECF No. 120-1 at 6-7), which described the procedures for disseminating the Notice to Class members as "reasonably calculated" pursuant to the requirement. Order at 17; *Nilsen*, 382 F. Supp. 2d 206 at 210. The Parties fully effectuated each

element of the Notice plan in a timely manner, thereby providing Class members ample opportunity to respond. Specifically, in accordance with the approved Notice Plan, the Notice was:

1. Posted prominently on DHHS and OCFS's website on August 12, 2024. (Gutierrez Final Approval Aff. ¶ 4(a));

2. Posted prominently on Plaintiffs' Counsel Children's Rights' website on July 8, 2024 (Nardi Final Approval Decl. ¶ 4);

3. Distributed via email and/or U.S. mail (if only a mailing address was available), with a link to the Settlement Agreement, to individuals connected with Class members such as certain parents and relatives/kin, case management staff, placement providers, and *guardians ad litems*, among others, with a request that the recipients share the information with Class members in their care on or by August 14, 2024 (Gutierrez Final Approval Aff. ¶ 4(d)(iii)-(vi)); and

4. Distributed via email and/or U.S. mail (if only a mailing address was available) to the Clerk of each Maine District Court, each congregate care placement, group home, residential counseling center, residential treatment center, and child placing agency, the office of Maine Court Appointment Special Advocates, and the Maine Bar Association, requesting that the Notice be disseminated to staff and posted in locations most likely to be seen by Class members and/or their legal representatives on or by August 14, 2024 (Gutierrez Final Approval Aff. ¶ 4(e)).

This posting, mailing, and emailing campaign meets the requirements of Rule 23(e). It followed the approved notice plan and sufficiently informed the Class members, as well as designated adults in their lives who can inform the child Class members, of the proposed settlement. *See Nilsen*, 382 F. Supp. 2d at 211-12 (extensive and well-planned means of disseminating the notice satisfied both Rule 23(e) and due process).

15

Plaintiffs' Counsel has committed to providing Defendants' Counsel with a copy of all objections, support, and other comments received regarding the proposed Settlement Agreement, as well as information relating to individuals who wish to appear personally and speak at the fairness hearing within five business days of receipt. *See* Notice at 3; Nardi Final Approval Decl. ¶¶ 6-7. Class members' comments may be submitted through September 25, 2024, and by October 9, 2024, Plaintiffs' Counsel will submit to the Court all submissions in support of or in objection to the settlement agreement. *See* Joint Mot. for Prelim. Approval, ECF No. 118 at 20.

### C. The Court Should Retain Jurisdiction as Specified in the Agreement

The Parties request that the Court dismiss the litigation and retain jurisdiction over this action "to enforce and ensure compliance with the terms of the Agreement, including through exercise of its contempt power, for as long as the agreement remains in effect." Agreement § IV.1.B. Courts may retain jurisdiction over a case when the "obligation to comply with the terms of the settlement agreement ha[s] been made part of the order of dismissal—either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994); *see also Colon-Torres v. Negron-Fernandez*, 997 F.3d 63, 70 (1st Cir. 2021); *Anderson v. Team Prior, Inc.*, No. 2:19-cv-00452-NT, 2022 WL 16531690, at *7 (D. Me. Oct. 28, 2022) (Torresen, J.) (granting final approval and dismissing action, and retaining jurisdiction over the action without time limitation to "enforce, interpret, and otherwise implement the settlement and Settlement Agreement"); *Venegas*, No. 2:14-CV-249-NT at *4 (retaining jurisdiction without time limitation for "purposes of supervising, administering, implementing, interpreting, and enforcing" the settlement agreement). Courts also commonly find class action settlement agreements on behalf of children in state custody to be reasonable even where there is no reference in the agreement to an expected conclusion date, unlike the situation here. *See, e.g.*, *M.B. v. Howard*, No. 18-2617-DDC-GEB, 2021

16

WL 295882, at *6 (D. Kan. Jan. 28, 2021) (in case addressing mental health services for children in foster care in Kansas, retaining jurisdiction without time limitation for enforcing the class action settlement); Amended Final Judgment and Order Granting Final Approval of Class Action Settlement, *M.B. v. Tidball*, No. 2:17-cv-04102-NKL (W.D. Mo. Dec. 12, 2019), ECF No. 320 (retaining jurisdiction without time limitation for enforcing the settlement agreement); *see also* Settlement Agreement § II.C, *M.B. v. Tidball*, No. 2:17-cv-04102-NKL (W.D. Mo. Jul. 8, 2019), ECF No. 280-1 (agreeing that the court would have continuing jurisdiction to enforce and ensure compliance with the settlement agreement for as long as the agreement remains in effect).

While ongoing jurisdiction in this case is critical, because the timeliness and coherence of the implementation process will depend on the ability of the Parties to resolve disputes promptly and without the need for protracted and expensive breach of contract actions, the ability of the Parties to seek Court intervention is limited in two important respects: (1) by procedures within the Agreement; and (2) by the Agreement's lifespan. First, the Agreement provides that the Parties must follow a specific meet-and-confer process as a condition precedent to seeking any relief from this Court, which could range from informal dispute resolution to the creation and development of a corrective action plan. Agreement § 3.A. Second, the terms of the Agreement specify that it shall remain in effect for a limited time only: five years from the date the Implementation Reviewer's contract begins. This time frame "may only be altered by [] [a]n Order of the Court" granting a motion to do so if certain specified conditions are met. *Id.* at § IV.1.B.a.i.-ii. Defendants may file a motion seeking earlier termination of the Agreement if they have met and sustained their obligations, meaning that the jurisdiction may cease in less than five years. *Id.* Jurisdiction may only be extended if Plaintiffs show by a certain date, and the Court agrees, that Defendants have failed to substantially meet a specific subset of key, objective obligations under the Agreement. *Id.* at §

IV.1.B.a.; *see supra* at 2. The Parties jointly expect that Defendants will be able to implement these important reforms within the five-year time frame set forth in the Agreement.

## CONCLUSION

The proposed Settlement agreement is fair, reasonable, and adequate, meets all other requirements of the Federal Rules, and should be approved. The Parties respectfully request an Order: (1) finding that the Settlement Agreement is fair, reasonable, and adequate and meets all other requirements of the Federal Rules; (2) granting final approval of the Settlement Agreement including the agreed-upon amount of $675,000 in attorney's fees and expenses to Plaintiffs' Counsel; (3) confirming certification of the Class of all children who are or will be in Defendants' foster care custody and who are or will be prescribed one or more psychotropic medications while in state care; and (4) retaining jurisdiction over the action for five years from the date the Implementation Reviewer's contract begins, subject to that jurisdiction ending earlier or being extended as provided for under the specific terms of the Settlement Agreement subject to future approval by the Court.

Dated: September 11, 2024

Respectfully submitted,

BERNSTEIN, SHUR, SAWYER & NELSON, P.A.

/s/ *John A. Woodcock III*
John A. Woodcock III
Eben M. Albert
100 Middle Street
PO Box 9729
Portland, ME 04101
(207) 774-1200
jwoodcock@bernsteinshur.com
ealbert@bernsteinshur.com

CHILDREN'S RIGHTS

/s/ *Marissa C. Nardi*

18

Marissa C. Nardi (admitted *pro hac vice*)
Samantha Bartosz (admitted *pro hac vice*)
Stephen Dixon (admitted *pro hac vice*)
Claire R. Glasspiegel (admitted *pro hac vice*)
Madeleine M. Kinney (admitted *pro hac vice*)
88 Pine Street, Suite 800
New York, New York 10005
(212) 683-2210
mnardi@childrensrights.org
sbartosz@childrensrights.org
sdixon@childrensrights.org
cglasspiegel@childrensrights.org
mkinney@childrensrights.org

**ATTORNEYS FOR PLAINTIFFS**


AARON M. FREY
Attorney General

*/s/ Sean Magenis*
Sean Magenis
Assistant Attorney General
6 State House Station
Augusta, ME 04333
(207) 626-8830
Sean.D.Magenis@maine.gov

**ATTORNEYS FOR DEFENDANTS**

19